LOUISIANA ᴇx ʀᴇʟ. GREMILLION, ATTORNEY GENERAL, ᴇᴛ ᴀʟ. *v.* NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE ᴇᴛ ᴀʟ.

No. 294.   Argued April 26, 1961.—Decided May 22, 1961.

*William P. Schuler,* Assistant Attorney General of Louisiana, and *M. E. Culligan* argued the cause for appellants.   With *Mr. Schuler* on the briefs were *Jack P. F.*

*Gremillion,* Attorney General, *Carroll Buck,* First Assistant Attorney General, and *George Ponder,* former First Assistant Attorney General.

*Robert L. Carter* argued the cause for appellees. With him on the brief was *A. P. Tureaud.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

One of the suits that is consolidated in this appeal was instituted in 1956 by the then Attorney General of Louisiana against appellee, the National Association for the Advancement of Colored People, in a Louisiana court and sought to enjoin it from doing business in the State. It was removed to the federal court.[1] Thereafter NAACP sued appellants in the federal court asking for a declaratory judgment that two laws of Louisiana were unconstitutional. A three-judge court was convened (28 U. S. C. § 2281) and the cases were consolidated. After a hearing (on affidavits) and oral argument, the court entered a *temporary* injunction that denied relief to appellants and enjoined them from enforcing the two laws in question. 181 F. Supp. 37. The case is here on appeal. 28 U. S. C. § 1253. We noted probable jurisdiction. 364 U. S. 869.

One of the two statutes of Louisiana in question prohibits any "non-trading" association from doing business in Louisiana if it is affiliated with any "foreign or out of state non-trading" association "any of the officers or members of the board of directors of which are members of Communist, Communist-front or subversive organizations, as cited by the House of Congress [*sic*] un-American Activities Committee, or the United States Attorney." [2] Every nontrading association affiliated with an

---

[1] See also *State* v. *N. A. A. C. P.,* 90 So. 2d 884.

[2] La. Rev. Stat., 1950, § 14:385 (1958 Supp.).

out-of-state association must file annually with Louisiana's Secretary of State an affidavit that "none of the officers" of the affiliate is "a member" of any such organization.[3] Penalties against the officers and members are provided for failure to file the affidavit and for false filings.

The NAACP is a New York corporation with some forty-eight directors, twenty vice-presidents, and ten chief executive officers. Only a few reside or work in Louisiana. The District Court commented that the statute "would require the impossible" of the Louisiana residents or workers. 181 F. Supp., at 40. We have received no serious reply to that criticism. Such a requirement in a law compounds the vices present in statutes struck down on account of vagueness. Cf. *Winters* v. *New York,* 333 U. S. 507. It is not consonant with due process to require a person to swear to a fact that he cannot be expected to know (cf. *Tot* v. *United States,* 319 U. S. 463) or alternatively to refrain from a wholly lawful activity.

The other statute [4] requires the principal officer of "each fraternal, patriotic, charitable, benevolent, literary, scientific, athletic, military, or social organization, or organization created for similar purposes" and operating in Louisiana to file with the Secretary of State annually "a full, complete and true list of the names and addresses of all of the members and officers" in the State. Members of organizations whose lists have not been filed are prohibited from holding or attending any meeting of the organization. Criminal penalties are attached both to officers and to members.

We are told that this law was passed in 1924 to curb the Ku Klux Klan, but that it was never enforced against any other organization until this litigation started; that when the State brought its suit some affiliates of NAACP

[3] La. Rev. Stat., 1950, § 14:386 (1958 Supp.).

[4] La. Rev. Stat., 1950, §§ 12:401–409.

in Louisiana filed membership lists; and that after those filings, members were subjected to economic reprisals. 181 F. Supp., at 39. The State denies that this law is presently being enforced only against NAACP; it also challenges the assertions that disclosure of membership in the NAACP results in reprisals. While hearings were held before the temporary injunction issued, the case is in a preliminary stage and we do not know what facts further hearings before the injunction becomes final may disclose. It is clear from our decisions that NAACP has standing to assert the constitutional rights of its members. *N. A. A. C. P.* v. *Alabama,* 357 U. S. 449, 459. We deal with a constitutional right, since freedom of association is included in the bundle of First Amendment rights made applicable to the States by the Due Process Clause of the Fourteenth Amendment. *Id.,* p. 460; *Bates* v. *Little Rock,* 361 U. S. 516, 523. And where it is shown, as it was in *N. A. A. C. P.* v. *Alabama, supra,* 462–463, that disclosure of membership lists results in reprisals against and hostility to the members, disclosure is not required. And see *Bates* v. *Little Rock, supra,* 523–524.

We are in an area where, as *Shelton* v. *Tucker,* 364 U. S. 479, emphasized, any regulation must be highly selective in order to survive challenge under the First Amendment. As we there stated: ". . . even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Id.,* 488.

The most frequent expressions of that view have been made in cases dealing with local ordinances regulating the distribution of literature. Broad comprehensive regulations of those First Amendment rights have been repeatedly struck down (*Lovell* v. *Griffin,* 303 U. S. 444; *Schneider* v. *State,* 308 U. S. 147; *Cantwell* v. *Connecti-*

*cut,* 310 U. S. 296), though the power to regulate the time, manner, and place of distribution was never doubted. As stated in *Schneider* v. *State, supra,* 160– 161, the municipal authorities have the right to "regulate the conduct of those using the streets," to provide traffic regulations, to prevent "throwing literature broadcast in the streets," and the like. Yet, while public safety, peace, comfort, or convenience can be safeguarded by regulating the time and manner of solicitation (*Cantwell* v. *Connecticut, supra,* 306–307), those regulations need to be "narrowly drawn to prevent the supposed evil." *Id.,* 307. And see *Talley* v. *California,* 362 U. S. 60, 64.

Our latest application of this principle was in *Shelton* v. *Tucker, supra,* where we held that, while a State has the undoubted right to inquire into the fitness and competency of its teachers, a detailed disclosure of every conceivable kind of associational tie a teacher has had probed into relationships that "could have no possible bearing upon the teacher's occupational competence or fitness." *Id.,* 488.

At one extreme is criminal conduct which cannot have shelter in the First Amendment. At the other extreme are regulatory measures which, no matter how sophisticated, cannot be employed in purpose or in effect to stifle, penalize, or curb the exercise of First Amendment rights. These lines mark the area in which the present controversy lies, as the District Court rightly observed.

*Affirmed.*

MR. JUSTICE HARLAN and MR. JUSTICE STEWART concur in the result.

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE CLARK joins, concurring in the judgment.

One of the important considerations that led to the enactment of the Norris-LaGuardia Act, 47 Stat. 70,

limiting the jurisdiction of the District Courts to grant injunctions in labor controversies, was that such injunctions were granted, usually by way of temporary relief, on the basis of affidavits. I am of the view that the issues that arise in controversies like the present one are likewise more securely adjudicated upon a foundation of oral testimony rather than affidavits. At all events, I am dubious about a fixed rule, such as that which is apparently in effect in the District Court for the Eastern District of Louisiana, barring oral testimony—subject to the usual safeguards of cross-examination—in proceedings for a temporary injunction. I assume that oral testimony will be available in a proceeding to make the temporary injunction permanent.

In this understanding I concur in the judgment of the Court.