Owen McGivebn, J.
This is an application to vacate or modify subpoenas issued by the Attorney-General of the State of New York in connection with an investigation into charges that section 781-b of the Penal Law was violated in the campaign preceding the primary election held in the City of New York on September 7, 1961.
The issues the court considers material are whether compliance with the provisions of the Civil Practice Act governing subpoenas is required in order to give them validity and whether the demands for certain records are violative of the First and Fourteenth Amendments of the Federal Constitution.
The petitioners contend that the statutory requirements as to payment of witness fees were not complied with. The Attorney-General contends that the subpoenas were issued in accordance with section 69 of the Executive Law which provides for the issuance of subpoenas by the Attorney-General or his deputies in connection with the enforcement of the Election Law or the provisions of the Penal Law relative to crimes against the elective franchise.
Section 404 of the Civil Practice Act provides that a subpoena issued out of court, to compel the attendance of a witness or the production of documents, must be served by delivering a copy of the subpoena to the witness and by paying or tendering the necessary fees.
Section 406, referring to the issuance of a subpoena by other persons, specifies that the subpoena must be served in the same manner as prescribed for the service of a subpoena issued out of a court of record.
The Attorney-General claims that under section 407 the aforesaid sections do not apply “ where special provision is otherwise made by law for compelling the attendance of a witness,” and that section 69 of the Executive Law is in effect such special provision. However, that section which relates to the power of the Attorney-General to issue subpoenas in specified areas is silent as to the mode and method of service.
In People v. De Valdor (234 App. Div. 50, 51 [1st Dept.]), a prosecution by the Attorney-General under the Martin Act, the subpoena was held to be defective because of the Attorney-General’s failure to pay or tender the requisite fees. That court stated: “ The Martin Act does not provide for any mode or method of serving a subpoena and we conclude that the provisions relating to subpoenas and their enforcement contained in *1002 the Civil Practice Act must be applied, otherwise the method of compelling attendance of a witness and the mode of service would find no rule to support the procedure in such instances.”
It is clear that the provisions as to mode and method of service in the Civil Practice Act must apply with respect to any subpoenas served under section 69 of the Executive Law.
The cases cited by the Attorney-General — People v. Westchester Carting Co. (N. Y. L. J., April 30, 1958, p. 6 col. 5), and Matter of Martens (109 Misc. 492) are not germane. In the former, the subpoena was issued in accordance with section 343 of the General Business Law, which relates to investigations by the Attorney-General of contracts or agreements for monopolies or in the restraint of trade. It specifically provides for the service of subpoenas and that no person shall be excused from noncompliance thereof on the ground of failure to tender or pay a witness fee or mileage unless demand therefor is made at the time testimony is about to be taken and as a condition precedent to offering the production of books, records or testimony and unless payment thereof be not thereupon made.
In Matter of Martens (109 Misc. 492, supra) the issue was the scope and power of a joint legislative committee to issue the subpoena and the authority of the court under section 867 of the Code of Civil Procedure (now section 411 of the Civil Practice Act) to relieve the witness from producing a paper, which section the court interpreted as applying to a trial or hearing pending in a court.
Although the objections advanced by petitioners are purely technical, they are a sufficient defense to a prosecution under section 69 of the Executive Law. (People v. De Valdor, 234 App. Dv. 50, supra.) And the remedy pursued herein was the proper one to test the service of the subpoena. (Carlisle v. Bennett, 268 N. Y. 212, 218.)
However, in view of the petitioners’ declared willingness to appear for examination and consequent waiver of their rights arising from defective service, the court will direct their appearance before the Attorney-General for examination.
We come now to the scope of the required production of records.
Section 781-b of the Penal Law, the alleged violation of which caused this inquiry, prohibits the printing or reproduction of any handbill, pamphlet, circular, post card, placard for another concerning any political party, candidate, committee, person, proposition or amendment to the State Constitution in any election pertaining to same unless there is also printed or reproduced thereon in the English language the name and post-office *1003 address of the printer thereof or of the person and committee at whose instance and request such handbill, pamphlet, circular, post card, placard or letter is so printed or reproduced.
In the light of that section, the demand in the subpoena duces tecum for general ledgers and general journals pertaining to all affairs and functions, including but not limited to copies of souvenir journals and treasurer reports for the past three years, appears relevant. They could be the means of ascertaining the names of the printer and the person and committee at whose instance the campaign material was printed or reproduced. Furthermore, the subpoenas purport on their face to be issued in respect to an investigation “of cases arising under the Election Law, and under the provisions of the Penal Law relating to crimes against the elective franchise ” without reference to the indicated motivation arising from the charges above referred to and now disclosed in the affidavit submitted on this motion.
A more serious issue arises with respect to the demand for the lists of all captains, co-captains, workers and membership roster of the North End Democratic Club.
Opposition to this demand is based upon challenged infringement of the constitutional rights of the individuals involved in that subpoena, contrary to the First and Fourteenth Amendments of the Federal Constitution.
The First Amendment is called into play whenever political beliefs or actions are restricted in any manner by any governmental agency. In Louisiana v. National Assn. for Advancement of Colored People (366 U. S. 293, 296), the Supreme Court said: “We deal with a constitutional right, since freedom of association is included in the bundle of First Amendment rights made applicable to the States by the Due Process Clause of the Fourteenth Amendment.”
In the foregoing case, as also in National Assn. for Advancement of Colored People v. Alabama (357 U. S. 449, 450) the Supreme Court upheld the right of a membership corporation to assert in behalf of its members a claim that they are entitled to be protected from being compelled by the State to disclose their affiliation with it.
In Shelton v. Tucker (364 U. S. 479, 488) the court said: “even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.”
In the circumstances of this case, compulsory disclosure of the required lists is likely to constitute an effective restraint *1004 on the members’ freedom of association. Undoubtedly, the supplying of the lists would not promote political freedom but would tend to restrict it. The result might well be to deter these people from lawful political activity in which they would otherwise lawfully engage and thus abridge the political process. The privacy that they enjoy in their political association may not, absent proper justification, be exposed to public glare, with a possible resultant effect in their social and economic dealings.
Immunity from State scrutiny of the membership is here so related to the rights of the members to associate freely with one another as to come within the protection of the Fourteenth Amendment. The State has failed to show a controlling justification for the deterrent effect on the free enjoyment of the right to associate which disclosure of the lists is likely to have (National Assn. for Advancement of Colored People v. Alabama, 357 U. S. 449, 450, supra).
Whatever interest the State may have in obtaining the names, it has not been shown to be sufficient to overcome petitioners’ constitutional objections to the production demanded (National Assn. for Advancement of Colored People v. Alabama, supra).
There must be some limit to the scope of an investigation, and the statute does not commission the Attorney-General to embark upon any roving course for the purpose of generally prying into the affairs of any person, whose possible connection with the inquiry, is, at the least, far remote.
Furthermore, with respect to this phase of the application we are not dealing with a premature application for relief in connection with a subpoena ad testificandum (see Matter of Edge Ho Holding Corp., 256 N. Y. 374) but with a demand for the production of designated documents not shown to be reasonably related to the performance of the Attorney-General’s statutory powers and duties and the public purpose to be achieved. (See Matter of La Belle Creole Int., S. A. v. Attorney-General of State of N. Y., 10 N Y 2d 192; Matter of Di Brizzi [Proskauer], 303 N. Y. 206, 216; Carlisle v. Bennett, 268 N. Y. 212, 217; Matter of Dairymen’s League Co-op. Assn. v. Murtagh, 274 App. Div. 591, 595, affd. 299 N. Y. 634; Dunham v. Ottinger, 243 N. Y. 423, 433.)
The application is granted to the extent of eliminating items 1 and 2 of the subpoena duces tecum requiring the list of captains, co-captains, workers and membership roster, and in all other respects denied.
If the petitioners and respondent cannot agree with respect to an appropriate date for appearance and production of the required documents, the court will set a date.