Michael TACYNEC, James McDonald and Northeast Philadelphia String Band, Inc.

v.

CITY OF PHILADELPHIA; Robert W. Crawford, Commissioner, Dept. of Recreation of the City of Philadelphia; Philadelphia New Year Shooters and Mummers Association, Inc.; Aqua String Band Inc.; Avalon String Band Inc.; Broomall String Band Inc.; Duffy String Band Inc.; Durning String Band Inc.; Ferko String Band Inc.; Fralinger String Band Inc.; Greater Kensington String Band Inc.; Greater Overbrook String Band Inc.; Hegeman String Band Inc.; Polish American String Band Inc.; Quaker City String Band Inc.; South Philadelphia String Band, Inc.; Trilby String Band Inc.; Uptown String Band Inc.; Woodland String Band Inc.

Russell J. GEISER; South Jersey String Band, Inc.

v.

CITY OF PHILADELPHIA; Robert W. Crawford, Appellants.

No. 81–3055.

United States Court of Appeals, Third Circuit.

Argued July 20, 1982.

Decided Sept. 2, 1982.

Certiorari Denied Jan. 24, 1983.

See 103 S.Ct. 819.

Alan J. Davis, City Sol., Mark A. Aronchick, First Deputy City Sol. (argued), John M. Myers, Div. Deputy City Sol., Jill A. Douthett, Deputy City Sol., Michael B. Tol-

cott, Asst. City Sol., Philadelphia, Pa., for appellants, City of Philadelphia and Nathaniel Washington.

Alan S. Gold (argued), Narin & Chait, Philadelphia, Pa., for Russell Geiser.

Alan L. Butkovitz (argued), Alfred S. Fein, P. C., Philadelphia, Pa., for Michael Tacynec, Northeast Philadelphia String Band, Inc.

Before ADAMS and HIGGINBOTHAM, Circuit Judges, and TEITELBAUM,[*] District Judge.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This case concerns the First Amendment rights of string bands to perform in Philadelphia's Mummers Parade and the proper standards to be used in evaluating the constitutionality of the Parade Rules. In 1981, the City adopted rules to limit the number of bands that could participate in the parade. The plaintiffs are two string bands and their founders, who would be excluded from marching by these Rules, unless a current parade participant does not march. They filed this action in the district court alleging that the regulations unconstitutionally inhibited their First Amendment freedoms of expression and association. The district court struck down the Rules as an invalid infringement of the bands' freedom of expression and therefore did not reach the freedom of association claim. Because we find that the district court did not apply the proper test in judging the Rules, the case will be remanded both for reconsideration of the free expression claim as well as a determination of the freedom of association claim.

## I. FACTUAL BACKGROUND

One of Philadelphia's well-established traditions is its annual Mummers Parade on New Year's Day. The parade includes thousands of participants, and draws many times that number of spectators. In recent years, the parade has ended after dark, thus creating serious safety and traffic hazards in the city. The parade is arranged and administered jointly by the Philadelphia Shooters and Mummers Association, a private organization, and the Recreation Commissioner of the City of Philadelphia. The Commissioner determines which groups may participate in the parade.

An important division of the parade consists of the string bands, units containing between 48 and 64 paraders performing music primarily on string, reed and percussion instruments, wearing elaborate original costumes and presenting a special theme. These units are judged on their performances, and cash prizes, paid by the city, are awarded to all bands. In 1980, the prizes ranged from $7,000 for first place to $2000 for last place. Undisputed Fact 9, Joint Appendix at 64a.

The Northeast Philadelphia String Band ("Northeast"), one of the plaintiffs in this case, was formed in February 1980, and applied to participate in the 1981 Mummers Parade. At that time, there was an unwritten policy that no new bands would be admitted to the parade, except to fill vacancies. When the Recreation Commissioner failed to admit Northeast to the parade, the band filed suit in the federal district court. Northeast alleged that the admission policy violated its First Amendment rights of free expression and association by preventing it from performing in the parade and by penalizing musicians who chose to join the new band rather than remaining in an older, established band. In 1981, the South Jersey String Band was formed and, when denied admission to the 1982 Mummers Parade, joined in the litigation commenced by Northeast.[1]

Under an order of the district court, the city in July 1981 officially published its rules limiting parade admittance to those

---

[*] Hon. Hubert I. Teitelbaum, United States District Court for the Western District of Pennsylvania, sitting by designation.

1. Pursuant to the terms of two injunctions issued by the district court, Northeast participated in the 1981 and 1982 parades, and South Jersey participated in the 1982 parade.

string bands that had marched in the 1980 parade, with vacancies to be filled by lottery. The city justified these restrictions as necessary to end the parade before dark, thus protecting public safety. Following a bench trial, the district court held that the plaintiffs' activity was a form of protected expression and the city could delimit that freedom only by the least restrictive means of achieving its goal of public safety. Since the court found that there were other means of shortening the parade that would not prevent the plaintiffs from performing, it struck down the Rules and permanently enjoined the city from denying the bands admittance to the parade. It is from this judgment that the city has appealed.

## II. *ISSUES PRESENTED*

This controversy raises several important First Amendment questions. First, we must decide whether the plaintiffs' activity, a band performance, is a form of expression protected by the amendment. Second, we must consider the proper test for determining the constitutionality of content-neutral regulations that infringe on protected expression. Third, we must address the plaintiffs' freedom of association claim, and the validity of content-neutral regulations in this context. Finally, it is necessary for us to discuss the effect of impermissible motive on the part of the city, and the standard for evaluating regulations that may be tainted in this manner.

### A. *Protected Expression*

Each band that marches in the Mummers Parade prepares a thematic arrangement. It then selects its music, costumes and drill work to express its own artistic conception of that theme. The district court concluded, and we agree, that this form of expression is protected by the First Amendment.

The City of Philadelphia argues that because the plaintiffs' activity does not convey an overtly political or ideological message, it is not "speech" and therefore is not entitled to First Amendment protection.[2] However, the Supreme Court has made it clear that "[e]ntertainment, as well as political and ideological speech, is protected; motion pictures, programs broadcast by radio and television, and live entertainment, such as musical and dramatic works, fall within the First Amendment guarantee." *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 65, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981) (citations omitted) (non-obscene nude dancing). *See also, Zacchini v. Scripps-Howard Broadcasting Co.,* 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977) (human cannonball performance); *Young v. American Mini-Theatres,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) ("adult" films); *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975) (the musical production "Hair"); *Goldstein v. Town of Nantucket,* 477 F.Supp. 606 (D.Mass.1979) (folk music). Because the Mummers-type string band performance is a form of expressive entertainment, we hold that it is covered by the First Amendment.[3]

### B. *Time, Place and Manner Restrictions*

Having found that the activity in question here is protected under the First Amendment, we proceed to consider whether the district court applied the correct test in examining the Recreation Commissioner's string band rules. The rules limit the number of bands performing in the parade to 23, the number that participated in the 1980 parade. Each band that marched in 1980 is entitled to a position, and if one of those bands chooses not to march, or is

---

**2.** In its brief to the district court and its initial brief to this Court, the city apparently conceded the applicability of the First Amendment to this activity. However, during oral argument (and in its supplemental brief), the city raised the argument that the band performances were not forms of constitutionally protected expression. Although we do not ordinarily consider arguments raised for the first time on appeal,

*Newark Morning Ledger Co. v. United States,* 539 F.2d 929, 932 (3d Cir. 1976), this rule may be waived to consider constitutional questions.

**3.** The district court found that because of the city's involvement with the parade, the requirement of "state action" had been met. The parties do not contest this finding on appeal.

disqualified, a new band is chosen by means of a lottery.[4] The plaintiffs contend, and the district court concluded, that because these regulations are not the least restrictive means of shortening the parade, they violate the plaintiffs' First Amendment rights and must be struck down.

■ Rules such as those in question here can be upheld against constitutional challenge if they are valid "time, place, or manner restrictions," a concept first discussed by the Supreme Court in *Cox v. New Hampshire*, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941). In *Cox*, the Court upheld a city ordinance which required that licenses be obtained before all parades. Because the city had an obligation "to assure the safety and convenience" of its citizens, it could regulate traffic on the streets. *Id.* at 574, 61 S.Ct. at 765. The Court held that "[i]f a municipality has authority to control the use of its public streets for parades or processions, as it undoubtedly has, it cannot be denied authority to give consideration, without unfair discrimination, to time, place and manner in relation to the other proper uses of the streets." *Id.* at 576, 61 S.Ct. at 765.

■ To determine whether the parade rules were valid "time, place, and manner" restrictions on the plaintiffs' freedom of expression, the district court in the present case applied the following test: "(1) no distinctions be drawn according to either the content or subject matter of the speech to be regulated; (2) a significant government interest be served; and (3) the least restrictive means be employed to accomplish those interests." *Appendix* at 249a

(citing *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981)). We agree with the district court's understanding of the first two elements of this test, but we conclude that it has misconstrued the third element. The Supreme Court has repeatedly listed the availability of adequate alternative forums as the third requirement of any time, place and manner restriction. *See Heffron, supra, Metromedia Inc. v. City of San Diego*, 453 U.S. 490, 516, 101 S.Ct. 2882, 2897, 69 L.Ed.2d 800 (1981) (plurality opinion); *United States Postal Service v. Council of Greenburgh Civic Associations*, 453 U.S. 114, 132, 101 S.Ct. 2676, 2686, 69 L.Ed.2d 517 (1981); *Linmark Associates, Inc. v. Township of Willingboro*, 431 U.S. 85, 93, 97 S.Ct. 1614, 1618, 52 L.Ed.2d 155 (1977); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976). *See also Ad World, Inc. v. Township of Doylestown*, 672 F.2d 1136 (3d Cir. 1982).

In *Heffron, supra,* the Supreme Court considered the constitutionality of regulations prohibiting groups from selling literature or soliciting funds in various areas of the Minnesota State fairgrounds. The Court, in upholding the fairground rules as valid time, place, and manner restrictions, elaborated on the criteria by which challenged regulations must be judged. Although the opinion does mention "less restrictive means" (*Heffron* at 654, 101 S.Ct. at 2567), it does not appear to be adopting that as a test. Rather, the Court was questioning whether, even were that stringent

4. Rules Governing Participating Organizations in the 1982 Mummers Parade:

 1. Participation in the 1982 Mummers Parade shall be limited as follows:

 (a) The number of string bands shall be limited to 23.

 \* \* \* \* \* \*

 2. Each string band, fancy club, brigade and comic club which marched in the 1980 New Year's Day Parade shall be eligible to march in the 1982 parade provided that it submits to the Department of Recreation not later than August 31, 1981, a statement by an authorized person that is able to comply with

all the requirements for participation set forth in the rules for its division.

 3. Notwithstanding paragraph 2 above, no string band, fancy club, brigade or comic club will be automatically eligible if it has been disqualified by the judges for the two preceding years.

 4. In the event that fewer than 23 string bands, 4 fancy clubs, 20 brigades or 5 comic clubs are deemed eligible to participate by the Department of Recreation after August 31, 1981, any open slot shall be filled by lottery.

 \* \* \* \* \* \*

standard to be applied, the regulation in question could be struck down.

In contrast with its conjectural language on that point, the Court put forth the traditional requirements for a valid time, place, and manner restriction in clear definitive statements. "A major criterion ... is that the restriction 'may not be based upon either the content or subject matter of the speech.'" *Id.* at 648, 101 S.Ct. at 2564 (citations omitted). "A valid time, place and manner regulation must also 'serve a significant governmental interest.'" *Id.* at 649, 101 S.Ct. at 2564 (citations omitted). "For [a regulation] to be valid as a place and manner restriction, it must also be sufficiently clear that *alternative forums for the expression of respondents' protected speech exist ...*" *Id.* at 654, 101 S.Ct. at 2567 (emphasis added). In addition, it is significant that the Court began its opinion in *Heffron* by citing a passage from *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), which defines valid time, place and manner restrictions as including "ample alternative channels for communication," but says nothing about less restrictive means of regulation. *See also Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 516, 101 S.Ct. 2882, 2897, 69 L.Ed.2d 800 (1981) (plurality opinion); *Lindmark Associates, Inc. v. Township of Willingboro,* 431 U.S. 85, 93, 97 S.Ct. 1614, 1618, 52 L.Ed.2d 155 (1977); *Young v. American Mini-Theatres,* 427 U.S. 50, 62–63, 96 S.Ct. 2440, 2448, 2449, 49 L.Ed.2d 310 (1976) (upholding zoning law in part because it did not limit the number of "adult" theatres); *Ad World, Inc. v. Township of Doylestown,* 672 F.2d 1136, 1142 (3d Cir. 1982), *cert. denied,* ── U.S. ──, 102 S.Ct. 2240, 72 L.Ed.2d 850 (1982) ("an essential characteristic of any acceptable place, time and manner regulation is that it leave adequate alternative methods of communication").

As these cases make clear, the proper third requirement for evaluating a time, place and manner restriction is the availability of an adequate alternative forum from which the speaker or performer may express himself, and not proof that this regulation is the least restrictive means of achieving the government's objectives. The "least restrictive alternative" analysis has traditionally been used in situations where the government has regulated expression *because* of its content. *See Widmar v. Vincent,* 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981); *Police Dept. v. Mosely,* 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); *Lamont v. Postmaster General,* 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965); *Martin v. City of Struthers,* 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed.2d 1313 (1943). In these cases, the Court has applied "the most exacting scrutiny" (*Widmar,* 454 U.S. at 276, 102 S.Ct. at 277) to determine whether there is any method of achieving the state's nondiscriminatory purposes (such as protection of public safety), which has a lesser effect on protected expression. If any "less restrictive" alternative exists, the state's action is invalid regardless of the existence of other forums for the protected expression. The Court has imposed this stringent requirement because of the danger to First Amendment freedoms inherent in a content-based scheme of regulation.

By contrast, content-neutral regulations do not pose this threat since the government is not taking a position supporting or opposing one point of view relative to another. Because of this, the Court has used the less stringent "alternative forum" test in these situations. Here the relevant inquiry focuses on the speaker or performer and his ability to have his views expressed, rather than on the state, and its choices in drafting legislation. In determining whether an "adequate alternative forum" exists in the present case, the district court may wish to consider factors such as the size of the audience, the prestige of an alternate parade, and the relative ability of another audience to appreciate the plaintiffs' expressive message. Of course, no one of these factors is necessarily determinative. Because the district court made no findings as to the existence of an adequate alternative to the Mummers Pa-

rade, we must remand the case to resolve this issue.[5]

## C. Freedom of Association

In addition to their freedom of expression claims, the plaintiffs contend that the parade regulations enacted by the Commissioner of Recreation violate their First Amendment right of association. The plaintiffs allege that the rules infringe their members' right of association because they permit established bands to march, but make it extremely difficult for new bands to enter the parade. The plaintiffs argue that this provision has two effects. It discourages individuals from leaving old bands to form new ones, and it penalizes those who have already left the old bands. Because of these effects, the rules are said to place unconstitutional burdens on the musicians' rights to choose their associations free from government intervention. Because the district court struck down the rules on freedom of expression grounds, it did not reach the plaintiffs' freedom of association challenge.

▬ The individual members of the bands in question have joined together to perform Mummers-type music and drills in the parade. Because this is a form of protected expression,[6] organizing to enable those individuals to communicate that expression effectively is protected by their right of association implicitly contained in the guarantees of the First Amendment. *See Healy v. James*, 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972); *In re Stolar*, 401 U.S. 23, 91 S.Ct. 713, 27 L.Ed.2d 657 (1971); *Baird v. State Bar of Arizona*, 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971); *N.A.A.C.P. v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *Louisiana ex rel.*

*Gremillion v. N.A.A.C.P.*, 366 U.S. 293, 81 S.Ct. 1333, 6 L.Ed.2d 301 (1961); *N.A.A.C.P. v. Alabama ex rel. Patterson*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); Emerson, *Freedom of Association and Freedom of Expression*, 74 Yale L.J. 1 (1964). The Supreme Court has stated that "it is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or *cultural matters* . . . ." *N.A.A.C.P. v. Alabama ex rel. Patterson, supra* at 460, 78 S.Ct. at 1170 (emphasis added). These Mummers performances are a form of cultural expression, and therefore, they are protected by the First Amendment guarantee of freedom of association. Because an association "and its members are in every practical sense identical," the organization may sue to protect the associational rights of its members. *N.A.A.C.P. v. Alabama, supra* at 459, 78 S.Ct. at 1170. Thus, the plaintiffs in this case have standing to challenge the city's action as an abridgement of their members' constitutionally protected freedom of association.

▬ As in the area of freedom of expression, an individual's right of association may be limited by valid, content-neutral time, place and manner restrictions enacted by the state. *Healy v. James*, 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972). In *Healy*, the Supreme Court held that a state college could not deny recognition to a local student group on the basis of that group's association with the national organization of Students for a Democratic Society (SDS), without evidence that the local chapter shared that organization's philosophy of campus disruption and violence. The Court, however, remanded the case because it was unclear from the record wheth-

---

**5.** The district court need not make additional findings on the first two elements of the test—content-neutrality and substantial government interest—as we agree with its determination that those elements have been satisfied. Both parties agree that the city had no knowledge of the content of the plaintiffs' performances when they were denied admittance to the parade. (Undisputed Facts 37 and 38; Appendix at 69a). The Parade Rules bar the city from

admitting any new bands, regardless of content, except by lottery when a vacancy occurs. (Parade Rule 4, note 3, *supra*). Because there is no evidence in the record that the city had advance knowledge of the likely content of any band's performance (old or new), there is no reason to believe that the city based its decision on content.

**6.** *See* Part II A, *supra*.

er recognition had been denied because of the local chapter's possible unwillingness to adhere to "reasonable school rules governing conduct." *Id.* at 191, 92 S.Ct. at 2351. Viewing these rules as reasonable time, place and manner restrictions, the Court held that the students could be required to obey them, even though those rules might indirectly burden the students' freedom of association. In this case, if the district court finds on remand that the rules are valid time, place or manner restrictions,[7] enacted to further the city's substantial interest in the safety of its citizens, then the regulations may stand, despite their indirect inhibition of associational freedom.

### D. *Motivation*

The plaintiffs allege that the city drafted the regulations, not to protect its citizens, but rather for the impermissible purpose of interfering with the plaintiffs' exercise of their rights to associate freely. The findings of the district court are unclear on this point. The trial judge held that the regulations served a "significant governmental interest" and that the city sought "to shorten the parade and thereby avoid the difficulties of protecting the public's safety after nightfall." *Appendix* at 249a, 250a. In addition, the parties stipulated that "[t]he reasons for the desire to end the parade before dark were concerns for public safety and public expense." *Undisputed Fact* 53, *Appendix* at 71a. In determining that other, less restrictive means of shortening the parade existed, however, the district court indicated that the city may have had other, less noble reasons for drawing the regulations as it did. "[T]he evidence establishes that the city adopted the regulation[s] to advance a nongovernmental interest of the city, the protection of the traditional string band. The regulation[s] discourage[] individual members of established bands from defecting to new bands and protects established bands from the competition of new bands."

 Because we are unable to determine whether, or to what extent, the city was motivated by an impermissible purpose in promulgating these rules, the case must be remanded for further findings on this issue. If the city enacted these regulations only because of its concern for public safety, the rules should be judged under the "time, place and manner" standard set forth in Part II B, *supra*. By contrast, if the city enacted these regulations *solely* for the purpose of interfering with the plaintiffs' freedom of association, the regulations would, of course, be invalid. *See Healy v. James*, 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972); *In re Stolar*, 401 U.S. 23, 28, 91 S.Ct. 713, 27 L.Ed.2d 657 (1971) ("the First Amendment prohibits [a state] from penalizing an applicant ... solely because of his membership in an organization"); *Baird v. State Bar of Arizona*, 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 657 (1971); *Louisiana ex rel. Gremillion v. N.A.A.C.P.*, 366 U.S. 293, 81 S.Ct. 1333, 6 L.Ed.2d 301 (1961).

 It may be, however, that the district court will find that the city acted for a variety of reasons, some permissible (such as protecting citizen safety) and some forbidden (discouraging the formation of new bands). When the government acts with mixed motives, the constitutionality of its actions must be judged by the standard set forth in *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). In *Mt. Healthy*, the school board discharged a teacher for a variety of reasons, some of which involved conduct that was protected by the First Amendment. The Supreme Court held that, even if the protected conduct was a "motivating factor" in the city's decision, the discharge would have been permissible if the city "had shown by a preponderance of the evidence that it would have reached the same decision ... even in the absence of the [forbidden motive]." *Id.* at 287, 97 S.Ct. at 576. *See also Village of Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 270–71 n.21, 97 S.Ct. 555, 566–67 n.21, 50 L.Ed.2d 450 (1977) (city must show "that the same decision would have resulted even

---

7. *See* Part II B, *supra*.

had the impermissible purpose not been considered"). On remand, the plaintiffs in this case must be given the opportunity to demonstrate that the city, in adopting the parade regulations, was motivated in part by a desire to inhibit the plaintiffs' exercise of their First Amendment rights. The city must then show that it would have chosen this method of limiting the length of the parade without regard for such an "impermissible purpose." If it cannot establish this, then under the *Mt. Healthy* test the rules would be invalid.

## III. CONCLUSION

The judgment of the district court will be vacated and the case remanded for further proceedings consistent with this opinion. Because the plaintiffs are likely to be preparing already for the 1983 Mummers Parade by purchasing costumes and rehearsing their performances, the district court may wish to expedite the hearing of this case.