**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JANE SULLIVAN; P. POES, 1-75; Individually and on behalf of others similarly situated, | No. 22-35338 |
| | D.C. No. 2:22-cv-00204-RAJ |
| *Plaintiffs-Appellees,* | |
| v. | OPINION |
| UNIVERSITY OF WASHINGTON, a Washington public corporation; ELIZA SAUNDERS, Director of Public Records and Open Public Meetings, University of Washington, | |
| *Defendants-Appellees,* | |
| v. | |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., | |
| *Intervenor-Defendant-Appellant.* | |

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Argued and Submitted November 7, 2022
Seattle, Washington

Filed February 17, 2023

Before:  Sandra S. Ikuta and Daniel P. Collins, Circuit
Judges, and Sidney A. Fitzwater,[*] District Judge.

Opinion by Judge Ikuta;
Concurrence by Judge Fitzwater

## SUMMARY[**]

### Civil Rights

In an action brought in part pursuant to 42 U.S.C. § 1983, the panel reversed the district court's preliminary injunction prohibiting the University of Washington from releasing, in response to a public records request, letters appointing plaintiffs to the University's Institutional Animal Care and Use Committee, whose purpose is to ensure that the University's research facility complies with the Animal Welfare Act when using live animals in research, tests or experiments.

---

[*] The Honorable Sidney A. Fitzwater, United States District Judge for the Northern District of Texas, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Plaintiffs, who are current, alternate or former members of the committee, alleged that the disclosure of such letters, which contained their personal identifying information, would violate their First Amendment right of expressive association.

The panel first summarized the Supreme Court's expressive-association jurisprudence, which applies when individuals have associated to advance shared views, or engage in collective effort on behalf of shared goals, that would be protected by the First Amendment if pursued individually.

The panel next determined that here, the letters of appointment existed (and were part of the University's public records) only because the committee members were appointed by the University according to statutory and regulatory criteria to ensure diverse representation. Their group association as committee members was not intended to enhance effective advocacy of their views or to pursue their lawful private interests, but rather to fulfill federal requirements. Because, in performing their work on the committee, the members were not engaged in an association deemed to be "expressive" under Supreme Court or this Circuit's precedent, the First Amendment right of expressive association did not protect them from the University's disclosure of personal identifying information contained in their letters of appointment.

The panel further stated that the Supreme Court's jurisprudence governing public employee speech pointed to the same conclusion as its jurisprudence governing expressive association. The committee members were analogous to government volunteers or contractors because they were appointed by the University to serve its public

function. And because an individual member's committee work (such as the preparation and issuance of inspection certification reports) fell within the scope of the member's official duties, that work was unprotected public employee speech. Because the committee members' work was unprotected by the First Amendment on an individual basis, their collective work on the committee was likewise unprotected. Accordingly, the University's disclosure of the committee members' letters of appointment pursuant to Washington's Public Records Act would not impermissibly burden any First Amendment right of expressive association.

Concurring, Judge Fitzwater joined the panel opinion and wrote separately to highlight what the panel did not hold. Nothing in the panel opinion held that the State of Washington was obligated through its Public Records Act to require disclosures of personal information that may subject committee members and their families and pets to threats to their personal safety. The State of Washington retained the authority to adopt other exemptions aimed at curbing required disclosures of personal information that could place at risk members of committees such as this one, or their families or property.

## COUNSEL

Peter D. Hawkes (argued), Angeli Law Group LLC, Portland, Oregon, for Intervenor-Defendant-Appellant.

Darwin P. Roberts (argued), Goldfarb & Huck Roth Riojas PLLC, Seattle, Washington, for Plaintiffs-Appellees.

Jessica L. Creighton and Nancy S. Garland, Assistant Attorneys General; Robert W. Ferguson, Attorney General; Washington Attorney General's Office, University of Washington Division, Seattle, Washington; for Defendants-Appellees.

Ashley Ridgway and Christopher Berry, Animal Legal Defense Fund, Cotati, California, for Amicus Curiae Animal Legal Defense Fund.

Katie B. Townsend, Adam A. Marshall, and Gunita Singh, Reporters Committee for Freedom of the Press, Washington, D.C., for Amici Curiae Reporters Committee for Freedom of the Press and 16 Media Organizations.

**OPINION**

IKUTA, Circuit Judge:

Appointees to a university committee created to satisfy federal legal requirements sought to enjoin the university from releasing the letters appointing them to the official committee.  The appointees claimed that the disclosure of such letters, which contain their personal identifying information, would violate their First Amendment right of expressive association.  The district court held that there was a serious question on the merits of that argument and preliminarily enjoined the disclosure.  We disagree.  The committee members' performance of their official duties is not protected by the First Amendment right of expressive association, and so the disclosure of public records that relate to performance of such duties does not impinge on that right.

I

Under the Animal Welfare Act (AWA), as amended by the Food Security Act in 1985, 7 U.S.C. § 2143; Pub. L. 99-198, 99 Stat 1354, certain research facilities that use live animals in research, tests, or experiments must maintain an Institutional Animal Care and Use Committee.  7 U.S.C. §§ 2132(e), (n), 2143(b)(1).[1]  The committee's purpose is to ensure that the research facility is in compliance with the AWA.  *Id.* § 2143(b)(3).

Under the AWA, the chief executive officer of the research facility must appoint to the committee at least three individuals who meet certain criteria.  *Id.* § 2143(b)(1).  The

---

[1] Similar committee requirements are also mandated by the Health Research Extension Act, 42 U.S.C. § 289d.

committee members must "possess sufficient ability to assess animal care, treatment, and practices in experimental research as determined by the needs of the research facility" and "represent society's concerns regarding the welfare of animal subjects used at such facility." *Id.* Of the members, at least one must be a doctor of veterinary medicine, *id.* § 2143(b)(1)(A), and at least one must be a person unaffiliated with the facility, *id.* § 2143(b)(1)(B). If the committee has more than three members, no more than three members may work at the same administrative unit of the research facility. *Id.* § 2143(b)(1)(C). The committee must inspect the research facility at least twice a year and review "practices involving pain to animals, and . . . the condition of animals." *Id.* § 2143(b)(3). After each inspection, the committee must file an inspection certification report including specified information. *Id.* § 2143(b)(4)(A). The report must be signed by a majority of the committee members and include information about any violations of facility standards as well as any minority views. *Id*.

The University of Washington is a research facility required to comply with the AWA. *See* 7 U.S.C. §§ 2132(e), (n), 2143(b)(1). A vice provost of the University (as the delegatee for the University president) appoints the members of the University's Committee. The Committee holds monthly meetings that are open to the public. It makes both its meeting minutes and semi-annual reports publicly available on its website. The chair of the Committee, Jane Sullivan, and the lead veterinarian have made their identities known to the public. The other members of the Committee prefer to remain anonymous because of concerns about their personal safety and the safety of their families and pets if their names are released. Therefore, the Committee

members who prefer to remain anonymous are identified in the minutes and reports only by their initials.

People for the Ethical Treatment of Animals (PETA), an organization opposed to the use of animals in research, filed a public records request with the University pursuant to Washington's Public Records Act (PRA).

The PRA requires government agencies, including the University, to "make available for public inspection and copying all public records, unless the record falls within the specific exemptions" listed in the statute or in another "statute which exempts or prohibits disclosure." Wash. Rev. Code Ann. § 42.56.070(1); *see also Wash. Pub. Emps. Ass'n v. Wash. State Ctr. for Childhood Deafness & Hearing Loss*, 194 Wash. 2d 484, 491 (2019). The disclosure requirements are subject to a wide range of statutory exemptions. *See* Wash. Rev. Code Ann. § 42.56.070(1); *Resident Action Council v. Seattle Hous. Auth.*, 177 Wash. 2d 417, 434 (2013), *as amended on denial of reh'g* (Jan. 10, 2014); *Lyft, Inc. v. City of Seattle*, 190 Wash. 2d 769, 780 (2018). In addition, the Washington Supreme Court has "recognized that the PRA must give way to constitutional mandates." *Freedom Found. v. Gregoire*, 178 Wash. 2d 686, 695 (2013); *see also Seattle Times Co. v. Serko*, 170 Wash. 2d 581, 595 (2010) (approving the withholding of public records where disclosure would violate an individual's constitutional rights, even though "[t]here is no specific exemption under the PRA" that protects such rights).

PETA requested the letters appointing the Committee members, which include personal identifying information, such as names, email addresses, office addresses, and work affiliations. After receiving PETA's information request, Eliza Saunders (the University official responsible for

responding to PETA's request) notified 55 individuals who were current, alternate, or former Committee members that the University would release their letters of appointment unless it received "a court order restricting the University from releasing the records."[2]

In response, Sullivan, along with a current Committee member and a proposed class of 73 individuals who were members, alternate members, or former members of the Committee, filed a purported class action under 42 U.S.C. § 1983 and the PRA against the University and Saunders in her official capacity. The complaint alleged (among other things) that the disclosure would violate the Committee members' right of expressive association under the federal and state constitutions because the members' "affiliation with each other, and with the [Committee], is a form of free association and expression protected under the Constitutions of Washington and the United States." In addition, the complaint sought an injunction and declaratory judgment on the grounds that the letters of appointment are exempt from disclosure under the PRA because their disclosure would violate the federal and state constitutions. The members also sought a temporary restraining order and preliminary injunctive relief to prevent the University from releasing the letters of appointment. The University did not oppose the TRO or preliminary injunction.[3]

---

[2] Sullivan believes that more than 55 current, alternate, and former members would be impacted by the disclosure.

[3] On appeal, the University does not defend disclosure of the letters of appointment. The University has also waived sovereign immunity for purposes of the preliminary injunction.

After granting the Committee members' motion for a TRO, the district court granted PETA's motion to intervene, and, over PETA's opposition, granted the Committee members' motion for a preliminary injunction. The district court determined that the Committee members raised a serious question as to whether disclosure would violate their First Amendment right of expressive association, which would allow them to claim an exception to the disclosure requirements of the PRA.[4]   PETA filed a timely interlocutory appeal.

## II

We have jurisdiction to review the district court's grant of a preliminary injunction.    28 U.S.C. § 1292(a)(1). Reviewing the grant for abuse of discretion, *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 979 (9th Cir. 2011), we evaluate the district court's legal conclusions de novo and factual findings for clear error, *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1286 (9th Cir. 2013).

On appeal, PETA challenges the district court's determination that there were serious questions on the merits as to whether disclosure of the members' letters of appointment would violate their right of expressive association under the First Amendment. PETA argues that the district court erred in holding that this First Amendment right might exempt the University from the PRA's requirement to disclose the requested letters. We begin by considering the scope of this constitutional protection.

---

[4] The district court also concluded that the other factors relevant to issuing injunctive relief weighed in the members' favor. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

A

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I.  Although the constitutional text does not explicitly address associational rights, the Supreme Court has ruled that the First Amendment includes a right of expressive association.  The Court has recognized that "[a]n individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984)*.*  Therefore, the First Amendment necessarily protects the right of those who join together to advance shared beliefs, goals, and ideas, which, if pursued individually, would be protected by the First Amendment. *See Buckley v. Valeo*, 424 U.S. 1, 22 (1976)*; see also NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958).  This constitutional right of expressive association may be infringed by compelled "disclosure of the fact of membership in a group seeking anonymity," *Jaycees*, 468 U.S. at 622–23, because the "[i]nviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs," *Patterson*, 357 U.S. at 462.

Not all groups, however, are entitled to this First Amendment protection; it can be invoked only by those groups actually engaged in expressive association.  *See Boy*

*Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000); *see also City of Dallas v. Stanglin*, 490 U.S. 19, 24 (1989) (recognizing that not every group is engaged in "the sort of 'expressive association' that the First Amendment has been held to protect"). Individuals engage in expressive association when they join with others to pursue "a wide variety of political, religious, cultural, or social purposes," *Jaycees*, 468 U.S. at 630, including the advocacy of both public and private points of view, the advancement of beliefs and ideas, and the transmission of "a system of values," *Boy Scouts of Am.*, 530 U.S. at 650. Members involved in such endeavors are generally protected in expressing the "views that brought them together." *Jaycees*, 468 U.S. at 623. In this vein, the Supreme Court has recognized the expressive association rights of members of organizations that advocate for political, social, and cultural issues, including the NAACP, *see, e.g.*, *Patterson*, 357 U.S. at 462; *Louisiana ex rel. Gremillion v. NAACP*, 366 U.S. 293 (1961); *Gibson v. Fla. Legis. Investigation Comm.*, 372 U.S. 539 (1963), political parties and organizations, *see, e.g.*, *Kusper v. Pontikes*, 414 U.S. 51, 57 (1973); *Brown v. Socialist Workers 74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91–92 (1982), unions, *see, e.g.*, *Bhd. of R.R. Trainmen v. Virginia ex rel. Va. State Bar*, 377 U.S. 1, 8 (1964), and myriad non-profit organizations, *see, e.g.*, *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2383 (2021); *Boy Scouts of Am.*, 530 U.S. at 656; *Jaycees*, 468 U.S. at 612; *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537 (1987); *N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 11–13 (1988). And though groups need not engage in political advocacy in order to be protected, *see Boy Scouts of Am.*, 530 U.S. at 648, the right of expressive association "presupposes that a group *has* an official policy" or "official

stance on a subject," *In re Grand Jury Subpoena, No. 16-03-217*, 875 F.3d 1179, 1184 n.3 (9th Cir. 2017).

By contrast, strangers who are merely "patrons of the same business establishment" and have not joined together to express shared beliefs do not engage in expressive association. *Stanglin*, 490 U.S. at 24–25 (holding that dance-hall patrons who "com[e] together to engage in recreational dancing" are not engaged in expressive association); *see also IDK, Inc. v. Clark County*, 836 F.2d 1185, 1195 (9th Cir. 1988) (holding that commercial associations between an escort service, its employees, and its clients is not expressive association). Likewise, "[a] couple out on the town is not an overtly expressive association when compared to political parties, civil rights organizations, publishers, churches, lobbyists, labor unions, and other special interest groups." *IDK, Inc.*, 836 F.2d at 1195.

In sum, the "Supreme Court's expressive-association jurisprudence" applies when individuals "have associated to advance shared views," or engaged in "collective effort on behalf of shared goals," that would be protected by the First Amendment if pursued individually. *In re Grand Jury Subpoena*, 875 F.3d at 1184 (citation and emphasis omitted); *see also Patterson*, 357 U.S. at 460 (stating that it is the "freedom to engage in association for the advancement of beliefs and ideas" that is protected by the First Amendment right of expressive association).

## B

The facts of this case preclude the Committee members' argument that disclosure of their letters of appointment pursuant to the PRA impermissibly impinges on the sort of expressive association that the First Amendment protects.

The letters of appointment exist (and are part of the University's public records) only because the Committee members were appointed by the University according to statutory and regulatory criteria to ensure diverse representation. *See* 7 U.S.C. § 2143(b)(1); 42 U.S.C. § 289d(b)(2); 9 C.F.R. §§ 1.1, 2.31(b). Their "group association" as Committee members is not intended to enhance effective advocacy of their views or "to pursue their lawful private interests," *Patterson*, 357 U.S. at 466, but rather to fulfill federal requirements, *see* 7 U.S.C. § 2143(b)(3) (stating that the committee's purpose is to ensure compliance with federal law); 42 U.S.C. § 289d(b)(1) (same); 9 C.F.R. § 1.1 (same). The Committee is not akin to a private association where members choose their own purposes and decide how to advance them; here, federal law prescribes both the Committee's purpose and its functions. *See* 7 U.S.C. § 2143(b)(4); 42 U.S.C. § 289d(b); 9 C.F.R. § 2.31(b). Because, in performing their work on the Committee, the members are not engaged in an association deemed to be "expressive" under Supreme Court or our precedent, the First Amendment right of expressive association does not protect them from the University's disclosure of personal identifying information contained in their letters of appointment.[5]

Our conclusion that a committee formed by the government to discharge an official purpose is not engaged in expressive association is consistent with cases holding that the First Amendment does not protect the speech of

---

[5] The addition of alternate and former members of the Committee as plaintiffs does not change this analysis, because their letters of appointment are likewise "public records" under the PRA due to their appointment to an official committee.

public employees speaking "pursuant to their official duties." *Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (2006). Under *Garcetti*, only "when an employee speaks as a citizen addressing a matter of public concern" do the Supreme Court's "cases indicate that the First Amendment may be implicated." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2423 (2022) (citation and quotation marks omitted). The rationale behind this approach is that the government "may impose certain restraints on the speech of its employees" that would be "unconstitutional if applied to the general public," *City of San Diego v. Roe*, 543 U.S. 77, 80 (2004) (per curiam), because "[t]he government's interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest when it acts as sovereign to a significant one when it acts as employer," *Bd. of Cnty. Comm'rs, Wabaunsee Cnty. v. Umbehr*, 518 U.S. 668, 676 (1996) (alteration in original) (citation omitted).

This framework applies not only in the context of public employment, but wherever "the relationship between the parties is analogous to that between an employer and employee" and "the rationale for balancing the government's interests in efficient performance of public services against public employees' speech rights applies." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1101 (9th Cir. 2011). Thus, the rules governing public employee speech also apply to government volunteers, *see, e.g.*, *Hyland v. Wonder*, 972 F.2d 1129 (9th Cir. 1992), as well as independent government contractors, *see, e.g.*, *Umbehr*, 518 U.S. at 673, and business vendors, *see, e.g.*, *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 923 (9th Cir. 2004).

Here, the Supreme Court's jurisprudence governing public employee speech points to the same conclusion as its

jurisprudence governing expressive association. The right of expressive association protects the sort of collective efforts that would be protected by the First Amendment if pursued on an individual basis. But here the Committee members are analogous to government volunteers or contractors because they were appointed by the University to serve its public function. And because an individual member's committee work (such as the preparation and issuance of inspection certification reports) falls within the scope of the member's official duties, *see* 7 U.S.C. § 2143(b)(4), that work is unprotected public employee speech, *see Garcetti*, 547 U.S. at 421–22. Therefore, because the Committee members' work is unprotected by the First Amendment on an individual basis, their collective work on the Committee is likewise unprotected.

Accordingly, because the Committee members' association is pursuant to their official duties and not any private expressive activities, it is not protected by the First Amendment right of expressive association. The Committee members may be engaged as individuals in *other* activities that are expressive in nature. But the letters of appointment relate to the Committee members' service on an official committee, and such an activity is not protected by the right of expressive association.[6]     Therefore, the University's

---

[6] The Committee members argue that the First Amendment doctrines governing public employee speech do not apply "to teaching and academic writing that are performed pursuant to the official duties of a teacher and professor," *Demers v. Austin*, 746 F.3d 402, 412 (9th Cir. 2014) (quotation marks omitted), and therefore their work for a university is entitled to First Amendment protection. We reject this argument. *Demers* is inapplicable here because, in performing the official work of the Committee, the members are not thereby engaged in "teaching and academic writing." *Id.*

disclosure of the Committee members' letters of appointment pursuant to the PRA would not impermissibly burden any First Amendment right of expressive association. Because the district court made a legal error in concluding that, by serving on the Committee, the members were thereby engaged in that First Amendment protected activity, it abused its discretion.[7]

**REVERSED and REMANDED.**

---

FITZWATER, District Judge, concurring:

I join the panel opinion and write separately to highlight what the panel does not hold.

The panel opinion does not address PETA's arguments about whether there is a reasonable probability that Committee members will be subject to constitutionally significant threats or harassment if their identities become known, because the opinion correctly concludes that the members' association is not protected by the First Amendment right to expressive association. But as the panel opinion also recognizes, except for the Committee chair and

---

[7] Because we conclude that the members' association is not protected by the First Amendment right to expressive association, we do not address PETA's arguments as to whether there is a reasonable probability that the Committee members will be subject to constitutionally significant threats or harassment if their identities become known. And because we conclude that the district court erred in determining that the members showed a serious question on the merits of their First Amendment claim, we do not consider PETA's arguments concerning the other factors for preliminary injunctive relief. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

the lead veterinarian, who have made their identities known, all other Committee members "prefer to remain anonymous because of concerns about their personal safety and the safety of their families and pets if their names are released." When it comes to organizations like PETA, these concerns may be well-founded. *See, e.g.*, Richard L. Cupp, Jr., *Considering the Private Animal and Damages*, 98 Wash. U. L. Rev. 1313, 1340 (2021) (PETA "is open about using 'controversial tactics' to gain media attention"). Nothing in the panel opinion, however, holds that the State of Washington is obligated through its Public Records Act to require disclosures of personal information that may subject Committee members and their families and pets to threats to their personal safety. As the panel opinion notes, the Act's disclosure requirements are already subject to a wide range of statutory exemptions. The State of Washington retains the authority to adopt other exemptions aimed at curbing required disclosures of personal information that could place at risk members of committees such as this one, or their families or property. Nothing in the panel opinion holds to the contrary.