

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-8-2008

# Young v. Beard

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1670

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Young v. Beard" (2008). *2008 Decisions*. Paper 886.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/886

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-1670

_____

RICHARD GLENN YOUNG,
Appellant

v.

JEFFREY BEARD, COMMISSIONER DEPARTMENT OF CORRECTIONS ("DOC");
DONALD VAUGHN, SUPERINTENDENT STATE CORRECTIONAL INSTITUTE
AT GRATERFORD ("SCIG"); BESSIE WILLIAMS, GRIEVANCE OFFICIALS
("DOC"); ROBERT BITNER; TSHANNA C. KYLER, DOC CORRECTIONAL
OFFICERS; SCOTT BOWMAN; DELANEY HUMPHREY; RAYMOND KNAUER;
CHARLIE JUDGE; RANDOLPH TAYLOR; DAVID DIGUGLIELMO; JOHN
MURRAY; THOMAS STACHELEK, UNIT MANAGER ("SCIG"); SHARON BURKS;
MARY CANINO; LESLIE HATCHER; JEFF KERRIN; RONALD VERSHINSKI,
Appellees

_____

Appeal from the
United States District Court for the
Eastern District of Pennsylvania
(D.C. No. 04-cv-02211)
District Judge: Honorable Paul S. Diamond

_____

Argued: May 8, 2008

_____

Before: BARRY and STAPLETON, Circuit Judges, and
RESTANI*, Judge

(Filed: July 8, 2008)

_____

*Honorable Jane A. Restani, Chief Judge of the United States Court of
International Trade, sitting by designation.

Stephen D. Brown
Jennings F. Durand (Argued)
Dechert
2929 Arch Street
18th Floor, Cira Centre
Philadelphia, PA 19104

Counsel for Appellant

Thomas W. Corbett, Jr., Attorney General
Claudia M. Tesoro, Senior Deputy Attorney General (Argued)
Calvin R. Koons, Senior Deputy Attorney General
John G. Knorr, III, Chief Deputy Attorney General, Chief, Appellate Litigation Section
Office of Attorney General of Pennsylvania
21 South 12th Street, 3rd Floor
Philadelphia, PA 19107

Counsel for Appellees

_____

OPINION OF THE COURT
_____

RESTANI, <u>Judge</u>.

Appellant Richard Glenn Young ("Young") appeals from a judgment of the District Court in favor of the defendants, finding that the limitations placed on prisoners' ability to perform in independent music groups did not violate his right of freedom of expression and his rights under the Establishment Clause of the First Amendment. We will affirm.

## **PROCEDURAL AND FACTUAL BACKGROUND**

Young, an inmate serving a life sentence at the Pennsylvania State Correctional

2

Institution at Graterford ("Graterford"), participated in the prison's recreational independent band program[1] and was a member of an independent inmate band that, in 2002, was featured in a VH-1 documentary entitled "Music Behind Bars."

After severe public criticism following the broadcast, Graterford suspended its music program to review whether changes were necessary. On October 21, 2002, Pennsylvania Department of Corrections ("DOC") Secretary Beard appointed a committee of DOC personnel to evaluate prison music programs. The committee's minutes and policy proposal indicated that recreational music groups in some form should continue to be permitted. Secretary Beard testified that based on what he learned during the committee's investigation and by talking to the deputies and the superintendent, he concluded that the independent band program was not properly administered or supervised and undermined prison security.

After partially restoring the music program in November 2002 and instituting a new music policy in August 2003, a final revised policy was issued in December 2003, which is still in effect. In addition to individual music-playing, which is allowed under various conditions in cells, the policy allows for instrumental musical performances at

---

[1] Independent bands practiced multiple times per week and were required to give at least three performances per year. In 2002, there were approximately ten independent bands at Graterford with three to twelve members apiece that practiced in the multi-level, multi-room auditorium area. Each band had an inmate leader responsible for organizing the group, obtaining the music, and scheduling rehearsals and performances. A staff member made periodic rounds during practices to supervise the inmates and a correctional officer was posted outside to check inmates as they came in.

religious services,[2] an annual talent show, and special events as approved by the facility manager. The new policy provides that any inmate may apply to perform in the talent show. To perform at a special event, inmates must be nominated by an inmate organization and may receive up to five supervised rehearsals of several hours apiece. The independent inmate bands as they existed in 2002, however, are no longer permitted under the revised policy.

Since the former independent inmate band program was eliminated, Young has not participated in the Graterford music program, except that he and several of his former bandmates participated in the 2005 talent show. Young is not a member of an inmate organization and has not participated in any special events, is not part of a religious band, and does not wish to play the type of music played by the allowed institutional music groups.

Young filed a civil action pursuant to 42 U.S.C. § 1983 on June 25, 2004, and a third amended complaint on August 11, 2006, alleging that the elimination of the prior inmate independent band program violated his right to freedom of expression and his rights under the Establishment Clause and Equal Protection Clause of the First Amendment. On August 23, 2006, the District Court granted the defendants' motion for

_____

[2] Graterford has six religious bands open to inmates who are members of the congregation and they are allowed two hours per week to rehearse for upcoming services in the small conference room in the chapel. A chaplain is directly responsible for supervising inmates and a corrections officer usually remains outside the door and can observe inside the room through a window in the door.

summary judgment on the Equal Protection claim. After Young's October 27, 2006, Stipulation of Dismissal, all claims were dismissed, except those seeking injunctive relief against Secretary Beard and DOC Superintendent DiGuglielmo. On January 31, 2007, following a bench trial, the District Court entered judgment for the defendants on the remaining claims.

## JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction under 28 U.S.C. § 1291. We review the District Court's factual findings for clear error and its legal conclusions de novo. United States v. Weaver, 267 F.3d 231, 235 (3d Cir. 2001).

## DISCUSSION

### I. Freedom of Expression

"[I]mprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment," but inmates' rights may be more restricted than those of non-inmates, as long as the prison regulations that do so are "'reasonably related' to legitimate penological interests, and are not an 'exaggerated response' to such objectives." Beard v. Banks, 548 U.S. 521, 126 S. Ct. 2572, 2577–78 (2006) (quoting Turner v. Safley, 482 U.S. 78, 87 (1987) (internal quotations omitted)). Once a plaintiff has demonstrated that a constitutionally protected interest is at stake, Turner v. Safley sets out a four factor test to determine the reasonableness of the regulation. Turner, 482 U.S. at 89–90. The Turner test requires

5

that:

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, and this connection must not be so remote as to render the policy arbitrary or irrational.  Second, a court must consider whether inmates retain alternative means of exercising the circumscribed right.  Third, a court must take into account the costs that accommodating the right would impose on other inmates, guards, and prison resources generally.  And fourth, a court must consider whether there are alternatives to the regulation that fully accommodate[ ] the prisoner's rights at de minimis cost to valid penological interests.

DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000) (internal quotations and citation omitted).

Substantial deference must be given to prison administrators' judgment.  Overton v. Bazzetta, 539 U.S. 126, 132 (2003).  While plaintiffs bear the overall burden of persuasion, id., prison administrators are required to demonstrate a rational connection between the policy and the alleged interest, which "'must amount [ ] to more than a conclusory assertion.'"  Jones v. Brown, 461 F.3d 353, 360 (3d Cir. 2006) (quoting Wolf v. Ashcroft, 297 F.3d 305, 308 (3d Cir. 2002) (internal quotations omitted)).

The First Amendment's right to freedom of expression includes musical expression, and band performances are protected as a form of expressive entertainment.  Ward v. Rock Against Racism, 491 U.S. 781, 790 (1989); see also Tacynec v. City of Philadelphia, 687 F.2d 793, 796 (3d Cir. 1982).  The District Court determined, and the parties do not dispute, that this controlling authority demonstrated that "Young has a First Amendment right to express himself through music, either individually or with a band." (J.A. 23.)

6

On the other hand, the enhancement of prison security and proper allocation of resources are legitimate government interests. See Overton, 539 U.S. at 133 (internal prison security is "perhaps the most legitimate of penological goals"); see also Jones, 461 F.3d at 361 (prison administrators have a legitimate interest in institutional security). Here, the record establishes that there is a rational connection between the elimination of the prior independent band program and institutional security because the poor supervision of the program itself created an unsafe inmate environment. Prison administrators did more than make a "conclusory assertion" that the program was a risk to prison security; rather, they went through the standard review process for evaluating a policy. A committee was first created to evaluate the music program and the committee's recommendations were submitted along with a revised draft policy for consideration to the Executive Deputy Secretary. The draft policy, with any recommended edits, was then further submitted for review to the director of the Bureau of Policy and Standards and then submitted for final approval to Secretary Beard.

The District Court correctly determined that the initial reason for suspending the music program was irrelevant, because although Secretary Beard "initially suspended the performance of music at Graterford in reaction to the VH-1 controversy, he subsequently made changes to the Independent Band Program because Mr. Beard believed that the program . . . was not safe." (J.A. 14.) Specifically, concerns centered on band leaders being placed in charge of other inmates and the manner in which the three-floor

7

arrangement was supervised. The District Court found that "virtually every weekday, up to sixty inmates practiced simultaneously throughout the auditorium area" and that "the multi-floor, multi-room layout of the rehearsal area made it impossible . . . to directly supervise the dozens of rehearsing inmates more often than once every twenty or thirty minutes." (Id. at 9.) Due to these concerns, the District Court emphasized Secretary Beard's right to be proactive, rather then merely reactive in his supervisory role, finding that "[t]he Constitution did not require [Secretary Beard] to wait for a tragedy to occur before he could limit inmate rehearsals to those that the prison could directly supervise." (Id. at 25.)

Several viable alternatives still exist for inmates to exercise their free expression rights. Graterford's current music program and its pre-2002 music program "are, in most respects, the same," because inmates can still take music classes, be part of an institutional band, perform at the talent show and at special events, and play music individually in their cells. (Id. at 24–25.) The only significant change is the reduction in rehearsal time that independent bands can enjoy. Reinstating the independent band program as it previously existed would also have a serious effect on guards, inmates, and prison resources. It would significantly undermine safety due to the lack of resources available for proper supervision, as this was part of the reason for discontinuing independent bands, and there is no indication in the record that these resources are now available. Finally, although plaintiff has proposed certain arguably less restrictive

8

alternatives to the music policy Graterford ultimately imposed, <u>Turner</u> adopted its deferential standard of review for "questions of 'prisoners rights'" precisely because it recognized that prison administrators must be accorded a degree of flexibility to address the "complex and intractable" problems that arise in our prisons.  See <u>Turner</u>, 482 U.S. at 84–89.  It is for this reason that prison officials are required to adopt only a <u>reasonable</u> response to the governmental interest asserted, not the <u>best</u> or <u>least restrictive</u> response.  For the reasons set forth above, we find that the Graterford music program is a reasonable response to the security concerns defendant has identified.

Accordingly, the District Court did not err in finding that the restriction of independent bands in Graterford's music program satisfied the <u>Turner</u> test and that Young's First Amendment right of freedom of expression was not violated.

## II.     The Establishment Clause

The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion."  U.S. Const. amend. I.  The Supreme Court has articulated various tests for analyzing Establishment Clause claims.  It has traditionally applied a test termed the "<u>Lemon</u>" test, under which "the challenged action is unconstitutional if (1) it lacks a secular purpose, (2) its primary effect either advances or inhibits religion, or (3) it fosters an excessive entanglement of government with religion."  <u>Modrovich v. Allegheny County</u>, 385 F.3d 397, 401 (3d Cir. 2004).

More recently, the Court has also applied an "endorsement" inquiry for certain

9

Establishment Clause claims. "The relevant question under the endorsement test is 'whether a reasonable observer familiar with the history and context of the display would perceive the display as a government endorsement of religion.'" Borden v. Sch. Dist. of Twp. of E. Brunswick, 523 F.3d 153, 175 (3d Cir. 2008) (quoting Modrovich, 385 F.3d at 401). Thus, when the government "affirmatively supports religion on preferential terms," its actions violate the Establishment Clause under the endorsement test. Tenafly Eruv Ass'n v. Borough of Tenafly, 309 F.3d 144, 175 (3d Cir. 2002) (citation omitted).

We have explained that the "endorsement" test is applicable "[i]n cases involving state participation in a religious activity." Borden, 523 F.3d at 175 (citation omitted); see also Freethought Soc'y of Greater Phila. v. Chester County, 334 F.3d 247, 258 (3d Cir. 2003). The Court also emphasizes that "[t]he touchstone for [its Establishment Clause] analysis is the principle that the 'First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion.'" McCreary County v. ACLU of Ky., 545 U.S. 844, 860 (2005) (citations omitted).

Young claims that the new prison music policy violates the Establishment Clause because, while the prior independent band program was removed, religious bands are still permitted. The notion of governmental neutrality is an important guide, but it is not a rigid rule. Id. at 874. The Supreme Court has long recognized that "there is room for play in the joints" between the First Amendment's two clauses concerning religion: "the government may . . . accommodate religious practices . . . without violating the

10

Establishment Clause," but "[a]t some point, accommodation may devolve into 'an unlawful fostering of religion.'" Cutter v. Wilkinson, 544 U.S. 709, 713–14 (2005) (citations omitted).

Graterford's music programs have not crossed the threshold into "unlawful fostering." Viewed through the prism of the Lemon test, the religious music program has a valid purpose, because the Free Exercise Clause requires the government to make reasonable religious accommodation for its prisoners, Hudson v. Palmer, 468 U.S. 517, 523–24 (1984), and "it is a permissible legislative purpose to alleviate significant governmental interference with the ability of religious organizations to define and carry out their religious missions." Corp. of the Presiding Bishop v. Amos, 483 U.S. 327, 335 (1987). We find nothing in the record remotely suggesting that the changes to the secular music program had a purpose of promoting religion. And, although the religious and non-religious programs are not precisely the same, we do not believe that the primary effect of the prison's music policies will be to advance religion. The religious music program is entirely optional, and the prison still offers several options for musical expression, both religious and non-religious. The District Court found that the prison's revision to the secular music program has not caused inmates to seek to join the religious program.

Further, the continued allowance of religious bands has not communicated either an endorsement or a disapproval of any religion because musical expression is not limited

11

to religious contexts. We do not believe a "reasonable observer" could interpret Graterford's music programs as an endorsement of religion.

Accordingly, the District Court did not err in concluding that Graterford's music program does not violate the Establishment Clause.

## CONCLUSION

For the foregoing reasons, we will AFFIRM the judgment of the District Court.

_____

TO THE CLERK:

Please kindly file the foregoing Opinion.

By the Court,

 /s/ Jane A. Restani
Judge

12