# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Pennsylvanians for Union Reform, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Pennsylvania Office of Administration, | : | No. 1019 C.D. 2014 |
| Respondent | : | Submitted: November 14, 2014 |


BEFORE:    HONORABLE BERNARD L. McGINLEY, Judge
                    HONORABLE ROBERT SIMPSON, Judge
                    HONORABLE ANNE E. COVEY, Judge


OPINION BY
JUDGE COVEY                                           FILED: December 18, 2015


Pennsylvanians for Union Reform (PFUR) petitions for review of the Pennsylvania Office of Open Record's (OOR) June 12, 2014 Final Determination denying PFUR's appeal from the Pennsylvania Office of Administration's (OA) denial of PFUR's Right-to-Know Law (RTKL)[1] request. There are three issues for this Court's review: (1) whether OOR erred by addressing OA's substantive arguments in support of its denial before determining whether OA possessed responsive records; (2) whether OOR erred by concluding that public disclosure of payroll deductions for union political action committee (PAC) contributions would violate Kenneth Jasper's (Jasper) right to freedom of association under the First Amendment to the United States (U.S.) Constitution; and (3) whether OOR erred and abused its discretion by permitting Jasper to participate in OOR's proceedings.

Commonwealth employee bargaining unit members have the opportunity to have PAC contributions deducted from their paychecks and transferred to PACs. The authority for this deduction and transfer is memorialized in certain

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

Commonwealth collective bargaining agreements, including the July 1, 2011 to June 30, 2015 agreement between the Commonwealth and Services Employees International Union Local 668 (Union). *See* OA Br. at 9.[2] On April 3, 2014, PFUR filed a RTKL request (Request) with OA for "records showing all Union [PAC] contributions processed by agency payroll deduction between . . . January 1, 2014 and March 31, 2014" for 30 employees from the Pennsylvania State System of Higher Education, the Pennsylvania Liquor Control Board and Union members Daniel Gray (Gray) and Jasper, who are employed by the Pennsylvania Department of Labor and Industry (L&I). Reproduced Record (R.R.) at 1a. The Request stated: "The primary purpose . . . is to find out whether or not these . . . employees made PAC contributions. Only of secondary interest is how much money they may have contributed." R.R. at 2a.

On April 10, 2014, OA acknowledged its receipt of the Request and, due to the need for a legal determination of whether the requested records were subject to access and bona fide staffing limitations, invoked a 30-day extension to more fully respond. *See* R.R. at 3a. On May 12, 2014, OA denied the Request, in pertinent part, because

> [i]ndividual payroll deduction information is exempt from disclosure under 65 P.S. § 67.708(b)(6), which exempts personal identification information including personal financial information. The records also do not document, and are not created, received or retained in connection with, a transaction or activity of OA, but rather of the employee; they are therefore not 'records' under 65 P.S. § 67.102. Further, the records are also arguably exempt under 65 P.S. § 67.708(b)(12) as material prepared for a public official or agency employee which does not have official purpose.

---

[2] *See also*

http://www.portal.state.pa.us/portal/server.pt/community/collective_bargaining_m_d/20137.

Information about the presence or absence of a record of PAC contributions associated with an identifiable individual is itself 'personal financial information' under 65 P.S. § 67.708(b)(6), and is exempt for all of the reasons elucidated herein.

OA's determination is confirmed by the April 16, 2014 [OOR] final determination regarding the nature of PAC contributions, which found that a record of 'the names of individuals contributing to PACs is not subject to disclosure' ([*PFUR v. OA*,] OOR Docket No. 2014-0400 [(*PFUR I*) at 8.[3]]

R.R. at 4a (emphasis in original). OA stated that it did not possess records for Pennsylvania State System of Higher Education or Pennsylvania Liquor Control Board employees.[4]

On May 13, 2014, PFUR appealed to OOR, but limited its appeal to OA's denial of Jasper's and Gray's PAC contribution records. PFUR contended that OA's refusal to inform PFUR whether or not responsive records existed as required by Section 901 of the RTKL, 65 P.S. § 67.901, constitutes "a refusal to answer the [R]equest. Therefore, PFUR's [R]request was *deemed denied,* not denied" and it was not required to address OA's grounds for deemed denial. R.R. at 10a. PFUR also asserted that OA acted in bad faith and unreasonably interpreted the law. Accordingly, PFUR requested OOR to issue an order enforcing the requirements of Section 901 of the RTKL and requiring OA to inform PFUR regarding whether or not OA possesses the requested records. R.R. at 11a.

By May 14, 2014 notice, OOR permitted the parties to supplement the record. OOR's notice also mandated that Jasper and Gray receive notification that PFUR was seeking records that contain their personal information, and that they may

---

[3] *PFUR I* involved PFUR's appeal from OA's denial for this same information in 2013. Jasper joined the Union's Request to Participate in that matter.

[4] In accordance with Section 502(b)(1) of the RTKL, 65 P.S. § 67.502(b)(1), OA forwarded those requests to the open records officers at the Pennsylvania State System of Higher Education and the Pennsylvania Liquor Control Board.

3

participate in the appeal as interested third parties.[5]  Both PFUR and OA notified Jasper and Gray of the appeal.  On May 20, 2014, Jasper filed a Request to Participate accompanied by a position statement in which he represented, in pertinent part, that "[he] may or may not have made contributions to the Union's [PAC]."  R.R. at 25a.  Jasper articulated that he "consider[s] deductions made from [his] gross wages to be personal financial information exempt from disclosure under the [RTKL]."  R.R. at 25a.  Jasper authorized the Union to represent his interests in this appeal.

In accordance with OOR's May 14, 2014 notice, OA timely responded to PFUR's appeal on May 23, 2014.  Therein, OA represented that it denied the Request, "relying upon the OOR's opinion in [*PFUR I*] . . . and all of the case law to which it refers, and upon the logic reflected in OA's record supplementation in [*PFUR I*] . . . ."  R.R. at 27a.

By May 27, 2014 letter, the Union notified OOR that it represented Jasper, and asserted that: (1) the requested information constitutes personal financial information exempt from disclosure under Section 708(b)(6)(i)(A) of the RTKL; (2) release of the information would infringe on Jasper's freedom of association right protected by the Pennsylvania and U.S. Constitutions; (3) the information is exempt from disclosure under Section 708(b)(12) of the RTKL as material prepared for an agency employee not connected with OA's business, the employee names and deduction amounts are not "records" under Section 102 of the RTKL,[6] and revealing the information would be an invasion of Jasper's privacy and risk his personal

---

[5] Under Section 1101 of the RTKL, the appeals officer may grant a person with a direct interest in the record under appeal the right to participate if no hearing has been held, no order has been issued, and the appeals officer "believes the information will be probative."  65 P.S. § 67.1101(c)(2)(iii).

[6] 65 P.S. § 67.102.

4

security under Section 708(b)(ii) of the RTKL;[7] (4) PFUR's appeal should be denied based on the OOR's final determination in *PFUR I* that PFUR is not entitled to the very information it now seeks; and, (5) the appeal should be denied under Section 506(a)(1) of the RTKL[8] because OOR previously considered and denied identical PFUR appeals in 2012 (OOR Docket No. 2013-0859)[9] and 2013 (*PFUR I*), and the repeated requests and protracted litigation have unreasonably burdened OA and the Union's members. *See* R.R. at 145a-151a.

On May 27, 2014, Gray filed a Request to Participate. In his position statement attached thereto, he disclosed: "I have never authorized nor have I ever had any [PAC] contributions deducted from my paycheck by any Commonwealth agency and I do not consider this fact to be personal or private." R.R. at 144a. Gray did not authorize the Union to represent his interests.

On May 28, 2014, OOR granted Jasper's Request to Participate because his allegation that records of any PAC contributions he may have made are not subject to disclosure would be probative of whether PAC contributions of a specifically-identified employee are public records under the RTKL.[10] *See* R.R. at 152a; *see also* Section 1101(c)(2)(iii) of the RTKL, 65 P.S. § 67.1101(c)(2)(iii). OOR denied Gray's Request to Participate, reasoning that because Gray admitted he

---

[7] 65 P.S. § 67.708(b)(1)(ii) (exempts records the disclosure of which "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual.").

[8] 65 P.S. § 67.506(a)(1) ("An agency may deny a requester access to a record if the requester has made repeated requests for that same record and the repeated requests have placed an unreasonable burden on the agency.").

[9] The OOR Docket No. 2013-0859 request was eventually withdrawn.

[10] PFUR's claim that OOR should have denied Jasper's participation is meritless. Regardless of whether OA has deducted PAC contributions for Jasper, information concerning Jasper's interests was at risk of disclosure and, thus, we agree that his participation in this appeal would be probative.

made no PAC contributions by Commonwealth paycheck deduction, OOR's decision in this case would have no bearing on him. *See* R.R. at 152a.

On May 30, 2014, PFUR filed its appeal supplement, in which it argued that: (1) OA should be sanctioned for refusing to issue a denial when it knew that it had no responsive records for Gray, and it failed to state whether it had records relating to Jasper; (2) Jasper should be sanctioned for proactively involving himself in the appeal in bad faith due to his refusal to state a claim upon which relief may be granted; and, (3) if responsive records do exist regarding Jasper, OA failed to meet its burden of proving that they are public records exempt from disclosure, particularly when PACs must report all contributions in their campaign finance reports.

On June 12, 2014, OOR issued its Final Determination denying PFUR's appeal because "[t]he government may not disclose *both* the employee's name *and* the amount of any financial contribution without infringing on the employee's right to freedom of association[;]" whether or not information is available under the Pennsylvania Election Code (Election Code)[11] "does not render that information public under the RTKL[;]" and, OOR is without authority to sanction OA. R.R. at 173a-174a. PFUR appealed to this Court.[12]

---

[11] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591. The primary and general election expense provisions in Article 16 of the Election Code (25 P.S. §§ 3241-3260b) were added by Section 2 of the Act of October 4, 1978, P.L. 893.

[12] "This Court's standard of review of a final determination of the OOR is *de novo* and our scope of review is plenary." *Hunsicker v. Pennsylvania State Police*, 93 A.3d 911, 913 n.7 (Pa. Cmwlth. 2014).

Jasper intervened in this appeal on July 2, 2014.

On October 30, 2014, OA filed an application to strike PFUR's reply brief, in which PFUR responded to OA's argument on appeal that "[d]isclosure of both an employee name and the amount or fact of that employee's [PAC] payroll deductions would require OA to create a record" (OA Br. at 19), since access to PAC contribution data is limited to specific reports filed with the Department of State (OA Br. at 22-23; OOR Br. at 25-26). OA contended that since its records creation argument made in *PFUR I* was incorporated in this appeal by its May 23, 2014 record supplement it was not new and, therefore, PFUR's reply brief was inaccurate. Having determined that PFUR's

6

"The RTKL was designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials and make public officials accountable for their actions." *Office of the Governor v. Raffle*, 65 A.3d 1105, 1107 n.1 (Pa. Cmwlth. 2013). Accordingly, Section 301(a) of the RTKL requires that "[a] Commonwealth agency shall provide public records in accordance with [the RTKL]." 65 P.S. § 67.301(a). Section 305(a) of the RTKL states:

> A record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record. The presumption shall not apply if:
>
> (1) the record is exempt under [S]ection 708 [of the RTKL];
>
> (2) the record is protected by a privilege; or
>
> (3) the record is exempt from disclosure under any other [f]ederal or [s]tate law or regulation or judicial order or decree.

65 P.S. § 67.305(a). Thus, "[p]ublic record" is defined as "[a] record, including a financial record, of a Commonwealth . . . agency that: (1) is not exempt under [S]ection 708 [of the RTKL]; (2) is not exempt from being disclosed under any other [f]ederal or [s]tate law or regulation or judicial order or decree; or (3) is not protected by a privilege." 65 P.S. § 67.102.

"Whether [the] sought after information constitutes a 'public record' is a preliminary, threshold issue that must be decided before reaching the question of

---

reply brief was in response to a new issue raised by OA, this Court denied OA's application to strike PFUR's reply brief on December 4, 2014.

As to the merits, we agree that OA's record creation defense argument is waived because it was not raised before OOR. *See Levy v. Senate of Pennsylvania*, 94 A.3d 436 (Pa. Cmwlth. 2014). First, OA's argument notwithstanding, there is no clear reference in the *PFUR I* final determination to any such defense. Second, even if reference was made therein, we are not persuaded that OA's mere incorporation of *PFUR I* in the instant case is sufficient to raise the argument to OOR.

whether any exceptions . . . apply." *Office of the Governor v. Bari*, 20 A.3d 634, 640 (Pa. Cmwlth. 2011). In order for the requested information to be a "public record," it "must constitute a 'record' under the RTKL[.]" *Id.* at 640. Section 102 of the RTKL defines "[r]ecord" as "[i]nformation, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency." 65 P.S. § 67.102.

Although it is unclear based on this record what role OA plays in L&I employee payroll deductions for PAC contributions, OOR has held that if an agency

> has records that reflect the contributions of its employees to a PAC which are processed through the [agency's] payroll system, the processing of the contribution is a transaction of the agency. Further, to the extent the [agency] processes a transaction to forward those contributions to a PAC[,] it is a transaction of the [agency].

*Campbell v. Pocono Mountain Sch. Dist.* (OOR Docket No. 2009-0766) (*Pocono Mountain School District*) at 6; *see also PFUR I* at 7. Because "the general provisions of the [RTKL] must be liberally construed to effect its objects," *Hous. Auth. of the City of Pittsburgh v. Van Osdol*, 40 A.3d 209, 215 (Pa. Cmwlth. 2012), and where, as here, OA failed to provide evidence that it does not process or forward the contributions, the Request is deemed to implicate agency records and the only question remaining is whether they are subject to public disclosure. *See Pocono Mountain Sch. Dist.* "The burden of proving that a record of a Commonwealth agency . . . is exempt from public access shall be on [OA] by a preponderance of the evidence." 65 P.S. § 67.708(a)(1).

PFUR first argues that OOR committed an error of law by addressing OA's substantive arguments in support of its denial before determining whether OA possessed records responsive to the Request. PFUR specifically asserts that where

there is no evidence that the requested information exists, and OA "mislead[s PFUR] and [OOR] regarding the existence of records . . . , this Court should direct OA to disclose to [PFUR] and to the [C]ourt whether OA has possession, custody or control of any records that are responsive to PFUR's [R]equest." PFUR Br. at 14.

Section 901 of the RTKL mandates:

> Upon receipt of a written request for access to a record, an agency shall make a good faith effort to **determine if the record requested is a public record**, legislative record or financial record **and** whether the agency **has possession, custody or control** of the identified record, **and** to **respond as promptly as possible** under the circumstances existing at the time of the request. . . . If the agency fails to send the response within five business days of receipt of the written request for access, the written request for access shall be deemed denied.

65 P.S. § 67.901 (emphasis added). This Court has held:

> This Court is bound to interpret statutes according to their plain language and, '[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.' 1 Pa.C.S. § 1921(b). By its plain language, Section 901 [of the RTKL] describes the actions that an agency is obligated to take when it receives a request for a record; it does not define what records are subject to disclosure under the RTKL. Pursuant to Section 901 [of the RTKL], the agency must: <u>**first**</u>**, make a good faith effort to ascertain if the requested record is a public**, legislative or financial record; <u>**second**</u>**, determine whether the agency has possession, custody, or control of the record**; and **third**, respond promptly.

*Office of Budget v. Office of Open Records*, 11 A.3d 618, 621-22 (Pa. Cmwlth. 2011) (bold emphasis and underline added).

Here, OOR asserted that "[t]he disclosure of the mere fact that [Jasper] has PAC contributions deducted from his paycheck would infringe upon his right[] of freedom of association. This was not the situation in *Staub* [*v. City of Wilkes-Barre*

9

*& LAG Towing, Inc.* (Pa. Cmwlth. No. 2140 C.D. 2012, filed September 12, 2013)]." R.R. at 173 n.3. Based upon the record, it is clear that within the five business days allotted by Section 901 of the RTKL, OA notified PFUR that the Request "is under legal review to determine whether [the] requested record is a record subject to access under the RTKL," which is a valid response under Section 902(a) of the RTKL, 65 P.S. § 67.902(a).[13] R.R. at 3a. Thereafter, OA timely denied the Request, *inter alia*, because OOR's *PFUR I* determination established that the names of PAC contributors are not subject to disclosure. *See* R.R. at 4a-5a. Although the underlying bases for OA's denial are in dispute, there is no question that OA complied with Section 901 of the RTKL by timely making a substantive

---

[13] Section 902(a) of the RTKL states:

> **Upon receipt of a written request for access, the open-records officer for an agency shall determine if one** of the following applies:
>
> (1) the request for access requires redaction of a record in accordance with section 706;
>
> (2) the request for access requires the retrieval of a record stored in a remote location;
>
> (3) a timely response to the request for access cannot be accomplished due to bona fide and specified staffing limitations;
>
> (4) **a legal review is necessary to determine whether the record is a record subject to access under this act**;
>
> (5) the requester has not complied with the agency's policies regarding access to records;
>
> (6) the requester refuses to pay applicable fees authorized by this act; or
>
> (7) the extent or nature of the request precludes a response within the required time period.

65 P.S. § 67.902(a) (emphasis added).

10

determination that records of only two specifically-named Commonwealth employees' PAC contributions were not accessible public records, and concluding that revealing whether OA had possession, custody or control of such records would disclose otherwise protected information.

PFUR's reliance upon *Staub*[14] to persuade this Court to "direct OA to disclose . . . whether OA has possession, custody or control of any records that are responsive to PFUR's request," is misplaced. PFUR Br. at 14. In *Staub*, this Court examined the City of Wilkes-Barre's (City) independent obligation to secure records of City-directed tows executed by LAG Towing, Inc. to determine whether the records were subject to access under Section 506(d) of the RTKL, 65 P.S. § 67.506(d) (relating to third-party government contractor records). This Court affirmed the trial court's order directing the City to pay 10% of the costs incurred by *The Citizen's Voice* newspaper to litigate its RTKL request because the City simply forwarded the record request to LAG and then forwarded LAG Towing, Inc.'s response to the requestor when Section 506(d) of the RTKL required the City to take reasonable steps to secure the records from LAG Towing, Inc. and then determine if they were subject to disclosure. Since OA in this case made an independent determination that the requested records were not subject to disclosure, and *Staub* involved a local agency's duty under Section 506(d) of the RTKL to review third-party records, it is clearly distinguishable and not persuasive under the facts of the instant case.

Based upon the foregoing, we hold that OA did not mislead PFUR and OOR regarding the existence of the requested information, and OOR did not err by addressing OA's substantive arguments in support of its denial before determining whether OA possessed records responsive to the Request.

---

[14] *Staub* is an unreported decision and, thus, has no precedential authority, but rather only persuasive value in the eyes of this Court. *See* Internal Operating Procedure § 414(a).

11

PFUR next argues that OOR committed an error of law by concluding that the public disclosure of Jasper's PAC contribution deductions would violate his right to freedom of association under the First Amendment to the U.S. Constitution.

Under Section 305(a)(3) of the RTKL, the presumption that a record in a Commonwealth agency's possession is a public record does not apply if "the record is exempt from disclosure under any . . . [f]ederal . . . law . . . ." 65 P.S. § 67.305(a)(3); *see also Jones v. Office of Open Records*, 993 A.2d 339 (Pa. Cmwlth. 2010). Moreover, Section 306 of the RTKL expressly provides: "Nothing in [the RTKL] shall supersede or modify the . . . nonpublic nature of a record or document established in [f]ederal . . . law . . . ." 65 P.S. § 67.306; *see also Dep't of Labor & Indus. v. Heltzel*, 90 A.3d 823 (Pa. Cmwlth. 2014).

The First Amendment to the U.S. Constitution states, in relevant part: "Congress shall make no law . . . abridging the freedom of speech . . . ; or the right of the people peaceably to assemble . . . ." U.S. CONST. amend. I. In Justice Douglas' concurrence to the Supreme Court's opinion in *Williams v. Rhoades*, 393 U.S. 23 (1968), he explained:

> The right of association is one form of orderly group activity protected by the First Amendment. The right to engage in association for the advancement of beliefs and ideas is one activity of that nature that has First Amendment protection. . . . '[F]reedom of association for the purpose of advancing ideas and airing grievances is protected by the Due Process Clause of the Fourteenth Amendment from invasion by the States.' [*Bates v. City of Little Rock*, 361 U.S. 516, 523 (1960).]

*Id.* at 38-39 (Douglas J., concurring) (citations and quotation marks omitted). In *Buckley v. Valeo*, 424 U.S. 1 (1976),[15] the U.S. Supreme Court specifically held that

---

[15] *Buckley* was superseded by statute on other grounds.

12

the First Amendment protects both political expression and political association. The U.S. Supreme Court recognized:

> [I]t is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute [an] effective * * * restraint on freedom of association. * * * This Court has recognized the vital relationship between freedom to associate and privacy in one's associations. * * * Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs.

*Bates*, 361 U.S. at 523 (quoting *Nat'l Ass'n for the Advancement of Colored People (NAACP) v. State of Alabama,* 357 U.S. 449, 462 (1958) (hereinafter referred to as *NAACP*)). Accordingly, the U.S. Supreme Court has long held:

> Decision in [each] case must . . . turn . . . on whether . . . instrumentalities of the State have demonstrated so cogent an interest in obtaining and making public the membership lists of these organizations as to justify the substantial abridgment of associational freedom which such disclosures will effect. Where there is a significant encroachment upon personal liberty, **the State may prevail only upon showing a subordinating interest which is compelling**. [*NAACP*]. *See also Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 . . . [(1905)]; *Schneider v. State of New Jersey*, 308 U.S. 147 . . . [(1939)]; *Cox v. State of New Hampshire*, 312 U.S. 569 . . . [(1940)]; *Murdock v. Commonwealth of Pennsylvania*, 319 U.S. 105 . . . [(1943)]; *Prince v. Commonwealth of Massachusetts*, 321 U.S. 158 . . . [(1944)]; *Kovacs v. Cooper*, 336 U.S. 77 . . . [(1949)].

*Bates*, 361 U.S. at 524 (bold emphasis and italics added); *see also Buckley*; *Louisiana* v. *Nat'l Ass'n for the Advancement of Colored People*, 366 U.S. 293 (1961); *Shelton v. Tucker*, 364 U.S. 479 (1960).

Whether public disclosure of PAC contribution deduction records violates Commonwealth employees' right to freedom of association under the First Amendment to the U.S. Constitution, or whether the state has an overriding

compelling interest, is an issue of first impression for this Court. However, as the parties acknowledge, it is not an issue of first impression for either PFUR or OOR.[16]

In 2009, *Campbell v. Montgomery County Community College* (OOR Docket No. 2009-0540) (*MCCC*), PFUR's current president Simon Campbell (Campbell) made a RTKL request for copies of Internal Revenue Service W-2 forms sent by MCCC[17] to employee Celeste Schwartz (Schwartz). MCCC supplied the requested record, but redacted information regarding Schwartz's payroll deductions for United Way contributions because it would expose a financial transaction revealing her associations and beliefs. Campbell appealed to OOR. On appeal, OOR denied Campbell's request based upon *California Bankers Ass'n v. Shultz*, 416 U.S. 21 (1974); *Plante v. Gonzalez*, 575 F.2d 1119 (5th Cir. 1978), *cert. denied*, 439 U.S. 1129 (1979); *Shelton* and OOR's previous determinations. *See MCCC*.

In *California Bankers*, the American Civil Liberties Union (ACLU), as a depositor and representative of its bank customer members, sought to enjoin the U.S. Treasury Secretary and other federal agencies from implementing certain provisions of the Bank Secrecy Act of 1970 (Act),[18] the purpose of which was to make available foreign and domestic bank records of customers thought to be engaged in illegal activities. Title I of the Act required financial institutions to maintain records of customer identities and transactions. Title II of the Act obligated the institutions to report certain foreign and domestic financial transactions to the federal government. The ACLU attacked those portions of the Act and their implementing regulations

---

[16] Although OOR's final determinations are not binding on this Court, we may rely upon them for their persuasive value. *Capital City Lodge No. 12, Fraternal Order of Police v. Pennsylvania Labor Relations Bd.*, 30 A.3d 1241 (Pa. Cmwlth. 2011); *Quaglia v. State Ethics Comm'n*, 986 A.2d 974 (Pa. Cmwlth. 2010); *Gateway Sch. Dist. v. Pennsylvania Labor Relations Bd.*, 470 A.2d 185 (Pa. Cmwlth. 1984).

[17] As a community college, MCCC is a "state-affiliated" entity that qualifies as a Commonwealth agency under Sections 102 and 301(a) of the RTKL.

[18] Pub.L. 91-508, 84 Stat. 1114, 12 U.S.C. §§ 1730d, 1829b, 1951-1959, and 31 U.S.C. §§ 1051-1062, 1081-1083, 1101-1105, 1121-1122.

arguing that, pursuant to *NAACP*, they violated its customers' First Amendment free speech and association rights. Although the U.S. Supreme Court ultimately concluded that the ACLU's claim was premature, it acknowledged that "absent a countervailing governmental interest, [organizational membership information] may not be compelled." *California Bankers*, 416 U.S. at 55. Justice Powell concurred and added: "Financial transactions can reveal much about a person's activities, associations, and beliefs. At some point, governmental intrusion upon these areas would implicate legitimate expectations of privacy."[19] *Id.* at 78-79.

In *Plante*, the 5th Circuit U.S. Court of Appeals affirmed the lower court's holding that a law mandating public disclosure of senators' personal financial statements was constitutional. The *Plante* Court discussed the public status of an elected official's finances, acknowledged the elected official's legitimate expectation of privacy in their financial transactions and stated relative to organizational membership disclosure:

> Here, memberships, associations, and beliefs are revealed, if at all, only tangentially. The Amendment calls for disclosure of assets, debts, and sources of income, each to be identified and valued. Although in some particular situations, rigorous application of the Amendment might implicate first amendment freedoms, when considering the Amendment on its face[,] this threat is too remote to raise the issue.[FN20]
>
> > [FN]20. Without implying any views on the merits of a suit which properly raised the issue, we feel a substantial constitutional issue might be raised by disclosure of one's income tax returns. Such **disclosure could be troublesome if it were to reveal the nature of various contributions made by the official or candidate, such as contributions to** a church, **a political party**, or a charity. Regulations by the Commission on Ethics might, of

---

[19] The majority of the *Buckley* Court quoted this language with approval. Thereafter, *Buckley* was superseded by statute on other grounds.

course, eliminate any threat of such sensitive revelations. The issue must await another case.

*Plante*, 575 F.2d at 1132-33 (emphasis added).[20]

In *Shelton*, the U.S. Supreme Court declared unconstitutional an Arkansas statute under which public school teachers, as an employment prerequisite, were required to submit affidavits giving the names and addresses of all organizations to which they belonged or contributed over the previous five years. The plaintiffs argued, *inter alia*, that the statute deprived them of their rights to associational liberty protected by the U.S. Constitution. The Arkansas Supreme Court and the U.S. District Court upheld the statute. The U.S. Supreme Court reversed, holding that although teacher competence was of utmost governmental importance, the teachers were hired on a year-to-year basis and were not covered by the civil service system and, therefore, mandated disclosure to the very people at whose will they serve would impair the teachers' rights of free association "which, like free speech, lies at the foundation of a free society." *Shelton*, 364 U.S. at 486. In reaching its decision, the U.S. Supreme Court stated:

> In a series of decisions[,] this Court has held that, even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. The breadth of legislative abridgement must be viewed in the light of less drastic means for achieving the same basic purpose.

*Id.* at 488 (footnote omitted). The *Shelton* Court concluded that "[t]he [subject] statute's comprehensive interference with associational freedom goes far beyond what might be justified in the exercise of the State's legitimate inquiry into the fitness and competency of its teachers." *Id.* at 490.

_____

[20] OOR recognized that the *Plante* disclosure was not analogous to cases preventing disclosure of organizational membership as in *NAACP* and its progeny, including *Bates* and *Louisiana*.

16

In *MCCC*, Campbell argued that by not requiring disclosure of payroll donations to United Way, a governmental entity was permitted to promote a private entity without public knowledge. OOR held that although employees do not have an affirmative constitutional right to use a government's payroll mechanism to assist private organizations, *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353 (2009), "[MCCC]'s allowance and the employee's voluntary choice to use the public payroll mechanism does not outweigh the privacy concerns of one's personal finances, as exempted under [the RTKL]." *MCCC* at 9. In that case, OOR found that Campbell had a more narrow means of gaining information regarding whether MCCC promoted private charitable organizations, and that disclosure of a particular individual's choice to participate in payroll deductions and the amount thereof is not necessary to achieve that purpose. In the case before us, OOR cited *MCCC* for the proposition that "the names of individual employees are subject to disclosure if any purported financial contributions [to] associational organizations are not disclosed." R.R. at 172a.

In *Pocono Mountain School District*, decided shortly after *MCCC*, Campbell sought the names of District employees who had PAC contributions deducted from their paychecks in 2008, together with the amounts of their deductions. Campbell also asked for the names of the PACs to which the contributions were made. The District denied the request. On appeal, OOR deemed the amount of the PAC contributions and PAC names public, and required the District to provide access to records reflecting the amounts of the individual PAC contributions and the names of the recipient PACs. Again citing *California Bankers*, *Plante*, *Shelton* and its holding in *MCCC*, OOR denied the request for individual contributor names because disclosure of that information would improperly infringe on the employees' freedoms of association. OOR took the position in the instant matter that, based on *Pocono Mountain School District*, "[t]he government may not disclose *both* the employee's name *and* the amount of any financial contribution

17

without infringing on the employee's right to *freedom of association*." R.R. at 173a (emphasis in original).

In *PFUR I*, in January 2014, PFUR requested that OA produce the full names of current and former Commonwealth employees who have or had union PAC contributions deducted from their paychecks in 2013, the amounts deducted for each individual and the names of the recipient PACs. *See PFUR I.* Just as it did in this case, OA denied the request, arguing that the records are personal financial information (*see* 65 P.S. § 67.708(b)(6)), are not agency records (*see* 65 P.S. § 67.102) and have no official purpose (*see* 65 P.S. § 67.708(b)(12)). PFUR appealed. OOR permitted numerous collective bargaining agents, including the Union, to participate on appeal.

On appeal in *PFUR I*, OA reiterated its original denial grounds, and added that the requested information was protected from disclosure by the individuals' rights to privacy guaranteed by the Pennsylvania and U.S. Constitutions. OOR, declaring OA no different than *Pocono Mountain School District*, and citing *Shelton* and *Bates*, upheld that mandating public disclosure of the Commonwealth employees' political affiliations would violate their right to freedom of association. OOR further acknowledged this Court's holding in *Department of Conservation and Natural Resources v. Office of Open Records*, 1 A.3d 929 (Pa. Cmwlth. 2010) that, although certified payroll records constitute personal financial information, such information is personal only to the extent that the employees' identities are attached to the information, and redaction of the employee names renders otherwise personal financial information impersonal. OOR again concluded that the names of individuals contributing to PACs is not subject to disclosure, but the amounts of PAC

18

contributions deducted by a government agency and the names of the receiving PACs must be disclosed.[21]  Notably, PFUR did not appeal from OOR's *PFUR I* decision.

In the instant case, citing *Shelton* and *Pocono Mountain School District*, OOR held that "the names of employees having PAC contributions deducted from their paycheck[s] was protected from disclosure by reason of their right to freedom of association protected by the First Amendment [to the U.S. Constitution]."  R.R. at 172a.  Relying upon its holding in *MCCC*, OOR held that "the names of individual employees are subject to disclosure if any purported financial contributions [to] associational organizations are not disclosed."  R.R. at 172a.  Referencing *Pocono Mountain School District*, OOR stated, "[c]onversely, if the names of public employees are not subject to disclosure, then any financial contributions to associational organizations are subject to disclosure."  R.R. at 172a-173a.  Based thereon, OOR concluded here that "[t]he government may not disclose *both* the employee's name *and* the amount of any financial contribution without infringing on the employee's right to freedom of association."  R.R. at 173a (emphasis in original).

PFUR contends that OOR erred in the instant case by concluding that disclosing both Jasper's name and the amount of his PAC contributions would infringe on his right to freely associate with the Union.  Specifically, PFUR argues that public disclosure of payroll deductions for PAC contributions "is substantially

---

[21] Jasper argues that the Request may be denied due to PFUR's serial requests for the same records.  Section 506(a)(1) of the RTKL indeed states that "[a]n agency may deny a requester access to a record if the requester has made repeated requests for that same record and the repeated requests have placed an unreasonable burden on the agency."  65 P.S. § 67.506(a)(1).  Section 506(a)(2) of the RTKL states, however, that "[a] denial under this subsection shall not restrict the ability to request a different record."  65 P.S. § 67.506(a)(2).  In *PFUR I*, PFUR requested the payroll deduction records reflecting PAC contributions by all current or former Commonwealth employees during 2013.  In this case, PFUR seeks records of only certain employees, who may or may not have made such contributions during 2013, and between January 1 and March 31, 2014.  Because the Request clearly seeks "a different record," neither OA nor OOR could have denied the Request on that basis.

19

related to the significant public interest in the discovery of how public employees use government resources to facilitate political contributions to influence political elections" and, although disclosure requirements may burden one's freedom of speech and financially harm unions, it does not prevent political speech and, in fact, often represents a less restrictive alternative to a flat ban on campaign-related activities. PFUR Br. at 22-23. There is no question that the Commonwealth's use of taxpayer resources is of significant public concern. However, the RTKL disclosure requirements are not distinguishable from other disclosure laws deemed violative of employees' rights to freely associate. The U.S. Supreme Court in *NAACP* held that the state's purpose of determining whether the NAACP was conducting intrastate commerce in violation of Alabama's foreign corporation registration statute was not sufficient justification to require disclosure of the NAACP's rank-and-file membership rolls. In *Bates*, the U.S. Supreme Court declared that the city's purpose of determining whether an organization's local chapter was a corporation subject to license taxes was not served by disclosure of membership lists. Similarly, the *Shelton* Court determined that the state's purpose of assuring teacher fitness and competency was not upheld by a statute compelling teachers to disclose their organizational contributions and/or memberships as a condition of employment. In *Louisiana*, the U.S. Supreme Court declared that the state's purpose of assuring that non-trading associations are not affiliated with out-of-state associations whose officers or board members are members of subversive organizations was not attained by mandating annual disclosure of names and addresses of its in-state members.

More recently, in *McCutcheon v. Federal Election Commission*, ___ U.S. ___, 134 S.Ct. 1434 (2014), the U.S. Supreme Court held that the aggregate limits on contributions to political candidates and party committees

> violate the First Amendment because they are not 'closely drawn to avoid unnecessary abridgment of associational

20

freedoms.' *Buckley,* 424 U.S.[] at 25 . . . . In the First Amendment context, fit matters. Even when the Court is not applying strict scrutiny, we still require 'a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is 'in proportion to the interest served,' . . . that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective.' *B*[*d.*] *of Trustees of State Univ. of N.Y. v. Fox,* 492 U.S. 469, 480 . . . (1989) (quoting *In re R.M.J.,* 455 U.S. 191, 203 . . . (1982)). Here, because the statute is poorly tailored to the [g]overnment's interest in preventing circumvention of the base [campaign contribution] limits, it impermissibly restricts participation in the political process.

*McCutcheon*, ___ U.S. at ___, 134 S.Ct. at 1456-57.

The *McCutcheon* Court held that the legitimate governmental interest in preventing corruption or the appearance of corruption was not served by placing a general limitation on campaign contributions. The Court acknowledged that although Congress may regulate campaign contributions in order to protect against corruption or the appearance thereof,

> [t]he First Amendment 'is designed and intended to remove governmental restraints from the arena of public discussion, putting the decision as to what views shall be voiced largely into the hands of each of us, . . . in the belief that no other approach would comport with the premise of individual dignity and choice upon which our political system rests.' *Cohen v. California,* 403 U.S. 15, 24 . . . (1971). As relevant here, the First Amendment safeguards an individual's right to participate in the public debate through political expression and political association. [*See*] *Buckley,* 424 U.S.[] at 15 . . . . When an individual contributes money to a candidate, he exercises both of those rights: The contribution 'serves as a general expression of support for the candidate and his views' and 'serves to affiliate a person with a candidate.' *Id.,* at 21–22 . . . .
>
> Those First Amendment rights are important regardless whether the individual is, on the one hand, a 'lone pamphleteer[] or street corner orator[] in the Tom Paine mold,' or is, on the other, someone who spends 'substantial

21

> amounts of money in order to communicate [his] political ideas through sophisticated' means. *Nat['']l Conservative Political Action Comm.,* 470 U.S.[] at 493 . . . . Either way, he is participating in an electoral debate that we have recognized is 'integral to the operation of the system of government established by our Constitution.' *Buckley, supra,* at 14 . . . .

*McCutcheon*, ___ U.S. at ___, 134 S.Ct. at 1448. The *McCutcheon* Court also made clear that "Congress may not regulate contributions simply to reduce the amount of money in politics, or to restrict the political participation of some in order to enhance the relative influence of others." *Id.* at ___ U.S. at ___, 134 S.Ct. at 1441.

Further, contrary to PFUR's contention, the fact that the Election Code imposes campaign contribution reporting requirements does not compel disclosure in this case. In *PFUR I*, as it did in the instant case, PFUR argued that the PAC contributions cannot be withheld under the RTKL because they are publicly available under the Election Code. OOR concluded: "The fact that information may or may not be available under the Election Code through [the Department of State] does not render that information public under the RTKL. *See also Feinour v. C[nty.] of Lehigh*, OOR [Docket No.] 2014-0507 . . . ." R.R. at 174a.

First, as OOR acknowledged herein, Section 1626(a) of the Election Code, requires that PACs publicly report contributions in excess of $250.00. Under Section 1626(b) of the Election Code, 25 P.S. § 3246(b), PACs must disclose in their reports the name, address, occupation and employer of those contributing in excess of $250.00, and must supply the name and address of each person who contributed over $50.00, and for contributions under $50.00 only the contributed amount must be disclosed. To the extent Commonwealth employees' contributions are below the relevant threshold, their names are not publicly available under the Election Code. Thus, in this case as in *PFUR I*, "there [wa]s no evidence that the requested information is *actually* on file with the Department of State." *PFUR I* at 8.

Second, according to the U.S. Supreme Court:

> [First Amendment f]reedoms . . . are protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference. *Grosjean v. Am*[.] *Press Co.*, 297 U.S. 233 . . . [(1936)]; *Murdock . . . ; Am*[.] *Comm*[*c'*]*ns Ass'n, C.I.O. v. Douds*, 339 U.S. 382 . . . [(1950)]; [*NAACP*]; *Smith v. People of the State of California*, 361 U.S. 147 . . . [(1959).]

*Bates*, 361 U.S. at 523 (italics added). Thus, "[w]hat the First Amendment precludes the government from commanding directly, it also precludes the government from accomplishing indirectly." *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 77-78 (1990). Accordingly, even "incidental restriction[s] on alleged First Amendment freedoms [can be] no greater than is essential to the furtherance of that interest." *U.S. v. O'Brien*, 391 U.S. 367, 377 (1968).

The Election Code's reporting requirements reflect the General Assembly's attempt to weigh individual rights to political association and participation in the political process against the overriding and compelling state interest in deterring corruption. Rather than doing away with a reasonable expectation of individual associational rights, the Election Code maintains those rights while protecting the larger political process.[22] If the RTKL were deemed by this Court to override the Election Code, the General Assembly's purpose would be subverted.

---

[22] "The Legislature enacted the Election Code to regulate the electoral process so that it is both orderly and fair. Campaign reporting requirements exist to ensure a fair election and to advise the electorate of the manner in which campaign money is spent." *Commonwealth v. Beck*, 810 A.2d 736, 746 (Pa. Cmwlth. 2002) (citation omitted). "The importance of campaign reporting requirements is obvious: by preserving public access to the manner in which campaign money is received and spent, public confidence in the election process is maintained." *Id.*

Based upon the foregoing, if Jasper made PAC contributions by Commonwealth payroll deduction, such activity would be protected by his First Amendment right to associate freely. PFUR has not offered any support for its conclusion that "the significant public interest in the discovery of how public employees use government resources to facilitate political contributions to influence political elections" would be furthered by OA disclosing whether and how much Jasper may have contributed to a PAC in this manner. PFUR Br. at 22-23. As a balance between employees' privacy and association rights and the public's right to know, OOR has consistently required disclosure of the amount of PAC contributions and the receiving PACs. Information revealed in that manner would enlighten PFUR as to one way in which Commonwealth employees use Commonwealth resources to influence elections. However, specifically naming one particular individual contributor and specifying how much he may have contributed is not necessary for PFUR to achieve that end.

OOR's determination does not prohibit OA from disclosing to PFUR whether employee contributions are made and in what amounts. Consistent with its administrative precedent and case law, OOR would order OA to produce records responsive to PFUR's request when the contributors' names and/or the contributed sums could be redacted. However, under the specific circumstances of this case, OA could not produce records without violating Jasper's rights. This Court has recognized:

> There may be some cases in which the evidence establishes that disclosure of public records which are not facially exempt will necessarily or so easily lead to disclosure of protected information that production of one is tantamount to production of the other, or that disclosure of the one is highly likely to cause the very harm the exemption is designed to prevent . . . .

24

*Van Osdol*, 40 A.3d at 216; *see also Governor's Office of Admin. v. PFUR*, 105 A.3d 61 (Pa. Cmwlth. 2014). This case presents just such a circumstance. PFUR initially sought records for two specifically-named Commonwealth employees and, on appeal, sought records related only to Jasper. If, in fact, Jasper makes PAC contributions by Commonwealth payroll deduction, and OA supplied records thereof, redacting his name would nevertheless disclose his Union association. Accordingly, we hold that OOR did not err by concluding that the public disclosure of Jasper's PAC contribution deductions, if any, would violate his right to freedom of association under the First Amendment to the U.S. Constitution.

Finally, PFUR argues that OOR committed an error of law and abused its discretion by permitting Jasper to participate in OOR proceedings when there was no evidence that the Commonwealth deducted PAC contributions from Jasper's paycheck. PFUR seeks to have either OA or Jasper disclose whether PAC contributions were deducted from Jasper's paycheck and in what amounts. Such disclosure would not only reveal records that are not public, but is not required in order for OOR to permit Jasper's participation in this appeal.

Section 1101(c) of the RTKL states:

(1) **A person** other than the agency or requester **with a direct interest in the record subject to an appeal** under this section may, within 15 days following receipt of actual knowledge of the appeal but no later than the date the appeals officer issues an order, file a written request to provide information or to appear before the appeals officer or to file information in support of the requester's or agency's position.

(2) The appeals officer may grant a request under paragraph (1) if:

(i) no hearing has been held;

(ii) the appeals officer has not yet issued its order; and

25

> (iii) the appeals officer believes the information will be probative.
>
> (3) Copies of the written request shall be sent to the agency and the requester.

65 P.S. § 67.1101(c) (emphasis added). Section 1102(a) of the RTKL also states, in relevant part:

> An appeals officer . . . **shall** do all of the following:
>
> (1) Set a schedule for the requester and the open-records officer to submit documents in support of their positions.
>
> (2) **Review all information filed relating to the request.** The appeals officer may hold a hearing. . . . **The appeals officer may admit into evidence testimony, evidence and documents that the appeals officer believes to be reasonably probative and relevant to an issue in dispute.** The appeals officer may limit the nature and extent of evidence found to be cumulative.

65 P.S. § 67.1102(a) (bold emphasis and underline added). Moreover, since the OOR has not adopted appeals hearing regulations, the General Assembly mandated that "the appeals officer shall rule on procedural matters on the basis of justice, fairness and the expeditious resolution of the dispute." 65 P.S. § 67.1102(b)(3); *see Bowling v. Office of Open Records*, 75 A.3d 453 (Pa. 2013).

As OOR directed, PFUR and OA notified Gray and Jasper of PFUR's Request and appeal. Gray did not consider payroll deductions for PAC contributions personal or private, and opted to reveal that no such deductions were made for him. Jasper, on the other hand, responded that he "may or may not have made contributions to the Union's [PAC]," and specifically stated that revealing the fact of such contributions would violate his constitutional right to associate with the Union. R.R. at 25a. Because Jasper's response went directly to the issue of whether PAC contributions by specifically-named Commonwealth employees are accessible public records, OOR granted Jasper's participation request.

This Court has held:

[W]hen agency action is committed to agency discretion by law, a court's review of the agency's action is well[-]defined. Specifically,

> courts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power; they will not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution. It is true that the mere possession of discretionary power by an administrative body does not make it wholly immune from judicial review, but the scope of that review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions.

*Allegheny Cnty. Housing Auth. v. Liddell*, 722 A.2d 750, 753 (Pa. Cmwlth. 1998) (quoting *Blumenschein v. Hous. Auth. of Pittsburgh,* 109 A.2d 331, 335 (Pa. 1954)).

Notwithstanding that OA did not reveal whether it had possession, custody or control of records of PAC contributions deducted from Jasper's paycheck, under circumstances in which **Jasper was the only Commonwealth employee whose payroll records remained at issue** in this appeal, OOR's appeals officer properly determined that Jasper had a direct interest therein, and deemed his participation "reasonably probative and relevant." 65 P.S. § 67.1102(a)(2). Accordingly, OOR did not err or abuse its discretion, but rather properly exercised its discretion in permitting Jasper's participation.

27

Based on the foregoing, OOR's Final Determination is affirmed.[23]

_____

ANNE E. COVEY, Judge

---

[23] Jasper's request for costs and attorney's fees is denied. Section 1304(b) of the RTKL, 65 P.S. § 67.1304(b), authorizes this Court to award reasonable attorney's fees and litigation costs for frivolous legal challenges "to an agency or the requester." Because Jasper is a third-party intervenor, rather than an agency or requester, he is not entitled to a fee and cost award. Moreover, because "decisions of administrative boards or tribunals have no precedential value on this Court[,]" and since none of OOR's prior determinations regarding public access to records of PAC contributions made by Commonwealth employees via payroll deduction have been reviewed by this Court, the instant legal challenge is not frivolous. *Scott v. Delaware Valley Reg'l Planning Comm'n*, 56 A.3d 40, 44 (Pa. Cmwlth. 2012).

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvanians for Union Reform,   :
                       Petitioner   :
                                   :
         v.                         :
                                   :
Pennsylvania Office of Administration,   :   No. 1019 C.D. 2014
                     Respondent   :

## O R D E R

AND NOW, this 18th day of December, 2015, the Pennsylvania Office of Open Record's June 12, 2014 Final Determination is affirmed.

_____
ANNE E. COVEY, Judge